**BREEN AIR FREIGHT, LTD., and Mercury Air Freight, Inc., Plaintiffs-Appellees,**

v.

**AIR CARGO, INC., et al., Defendants-Appellants.**

No. 91, Docket 72–1500.

United States Court of Appeals, Second Circuit.

Argued Oct. 19, 1972.

Decided Nov. 10, 1972.

---

Edward Brodsky, Robert E. Stafford, Goldstein, Shames & Hyde, New York City, for plaintiffs-appellees.

Harold L. Warner, Zachary Shimer, Chadbourne, Parke, Whiteside & Wolff, New York City, for defendants-appellants other than Ryder System, Inc. and Ryd-Air, Inc.

George D. Reycraft, P. Jay Flocken, Cadwalader, Wickersham & Taft, New York City, for defendants-appellants Ryder System, Inc. and Ryd-Air, Inc.

Before WATERMAN, SMITH and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge:

This is an interlocutory appeal from two orders in which Judge Irving Ben Cooper of the Southern District of New York denied defendant-appellants' motion to stay this anti-trust action. Defendants claimed that the facts plaintiffs allege show that primary jurisdiction over the subject matter resided in the Civil Aeronautics Board (CAB). Plaintiffs allege that defendants have committed violations of the antitrust law through their concerted refusal to deal with plaintiffs as airfreight cartage agents in metropolitan New York City. Defendants claim that plaintiffs' action should be stayed until such time as the CAB has had an opportunity to conduct administrative proceedings on the complaint. After the motion for a stay was denied Judge Cooper certified an interlocutory appeal on the ground that an important controlling question of law was involved in the case and an immediate appeal from his ruling might materially advance the ultimate termination of the litigation. Appellants then moved in this court for leave to appeal pursuant to 28 U.S.C. § 1292(b) and Rule 5 of the Fed.R.App.Pro., and we granted the motion. The sole issue before us is whether the doctrine of primary jurisdiction is operative under the circumstances here, so as initially to deprive the antitrust court of jurisdiction. For reasons which follow, we hold that the doctrine is not applicable here and we affirm the orders below denying the motion for a stay.

Under the Federal Aviation Act of 1958 (72 Stat. 731) the CAB is given broad authority to regulate certain aspects of the airline industry throughout the United States. See Pan American World Airways, Inc. v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963). Pursuant to this authority

the CAB is empowered to approve agreements among air carriers and air carriers and common carriers affecting air transportation. 49 U.S.C. § 1382. All agreements affecting air transportation must be filed prior to their implementation by the air carriers which are party to them, and, once approved by the CAB, these agreements are exempt from the operation of the antitrust laws, 49 U.S.C. § 1384, and the Board may also enjoin anticompetitive behavior among air carriers, 49 U.S.C. § 1381.

Plaintiffs Breen Air Freight, Ltd. and Mercury Air Freight, Inc. are corporations which formerly were engaged under contract with defendant Air Cargo, Inc. (ACI) in the pickup and delivery of air freight in metropolitan New York City. Breen had been so engaged since 1967 and Mercury since 1948. In 1970 ACI refused to renew their contracts and, instead, signed a contract with defendant Ryd-Air, Inc., whereby Ryd-Air became exclusive cartage agent in New York City. Plaintiffs claim that this decision not to renew their contracts and the correlative agreement with Ryd-Air constitute a violation of the antitrust laws, and they seek treble damages.

With the approval of the CAB defendant ACI was first established in 1941 by seventeen certified air carriers as a joint research corporation. By 1944 its research had been completed and ACI became inactive. In 1947 ACI was reactivated by an agreement among the airlines to provide, directly or by contract, terminal and cartage services as agent of the air carriers. This agreement was filed with the Board and was approved by the Board by its Memorandum Order of December 31, 1947. The Board specified that it would require ACI to file such future ACI contracts and documents as its Economic Bureau should prescribe needed Board approval. Over 200 cartage contracts, such as those under which Breen and Mercury had been operating, were submitted and approved. As of March 8, 1962, however, the Economic Bureau exempted cartage contracts from the filing requirements and since that date ACI has not been required to file and has not filed with the Board its "pick-up and delivery contracts" with local agents.

In 1970 ACI executed two agreements with defendants Ryder System, Inc. and Ryd-Air. These agreements constitute the basis of the antitrust complaint. The first provided for the formation of Ryd-Air; it was to be a subsidiary of Ryder created for the purpose of providing cartage services in metropolitan New York City. ACI took a 20% stock interest in Ryd-Air and two of five seats on the Board of Directors. Immediately thereafter Ryd-Air executed a second agreement, a cartage contract with ACI, by which it became the exclusive airfreight cartage agent in New York City. These agreements, although embodied in separate documents, were clearly part of a single inclusive plan wherein Ryd-Air would be formed, and, when formed, would then become the exclusive cartage agent in New York. Neither the Ryd-Air incorporation document nor the cartage contract was filed with or explicitly approved by the Board.

In opposition to plaintiffs' antitrust allegations defendants contend that even though these agreements have neither been filed nor approved by the CAB they have been immunized from the operation of the antitrust laws. As to the agreement creating Ryd-Air, they assert that this agreement is nothing more than an implemention of the air carriers agreement of 1947 which the Board had approved by its 1947 Order. As to the cartage contract, they assert that it was, and is, exempt from the filing requirement by the amended regulation of March 8, 1962 issued by the Economic Bureau. Alternatively, defendants urge that inasmuch as both agreements are at least "arguably lawful" (i. e., "arguably approved") the antitrust court must defer to the CAB under the authority of Carnation Co. v. Pacific Westbound Conference, 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966) and Allied Air Freight, Inc. v. Pan American World Airways, Inc., 393 F.2d 441 (2 Cir.

1968), cert. denied, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968).[1]

■ This court cannot agree that the agreements have been immunized, that they are "arguably lawful," or that the CAB has jurisdiction, primary or otherwise, to immunize them. We rest on the ground that the agreements, viewed as interdependent parts of a single inclusive plan, have not been executed by "air carriers" and that consequently the Board lacks authority to immunize the contracting parties from liability for antitrust damages.[2] Accordingly, nothing would be gained by sending the agreements back to the CAB for preliminary administrative agency action and we decline to do so. See Silver v. New York Stock Exchange, 373 U.S. 341 at 357–358, 83 S.Ct. 1246, 10 L.Ed.2d 389; Thill Securities Corp. v. New York Stock Exchange, 433 F.2d 264 (7 Cir. 1970) cert. denied, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 532 (1971) (Chief Judge Swygert concurring at 277).

Also, inasmuch as the two agreements are inseparable, any authority the Board might have to immunize the parties from antitrust proceedings must be a broad enough authority to encompass the right to administrative control over the effectuation of both of them. Accordingly, we turn our attention to the first of the two agreements, the one by which ACI agreed to participate in the creation of Ryd-Air.

Although we find little assistance in the definitional section of the Federal Aviation Act of 1958 to help us define the phrase "air carrier" (49 U.S.C. § 1301(3) & (10)),[3] we think it clear from ACI's activities that ACI is not an "air carrier." ACI was formed as a subsidiary of the airlines for the limited purpose of acting solely as their agent in providing terminal and cartage services

1. *Carnation* was a private action for treble damages in which plaintiff alleged that a rate increase charged by defendant shipping corporations was a violation of the antitrust laws. Defendants shipping conferences claimed they and their members were totally immune from the antitrust laws by virtue of the Shipping Act of 1916 which, they alleged, repealed all antitrust regulation of the rate-making activities of the shipping industry. They relied on the Court's prior decisions in U. S. Navigation Co. v. Cunard Steamship Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1931) and Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1951). However, the Supreme Court interpreted these decisions as permitting an antitrust suit for damages if the activities being attacked are not "arguably lawful" under the regulatory statute. Inasmuch as the activities were "arguably lawful" in *Carnation*, the Court determined that the judicial proceedings should be stayed, pending a determination by the Commission of the legality of the defendants' activities.

In *Allied* this court had before it a case "in all respects analogous to the *Carnation* case except that the alleged agreement concededly has not been passed upon by the CAB." 393 F.2d at 448. The district court had granted a stay, but our court reversed the district court,

vacated the stay order, and instructed the district court to carry forward the proceedings on the antitrust claims.

2. It is clear under Section 412 of the Act (49 U.S.C. § 1382) that the Board can only approve and thereby immunize agreements to which "air carriers" are parties. Additionally, under Section 411 (49 U.S.C. § 1381), the Board can issue cease and desist orders against air carriers, foreign air carriers, and ticket agents which are engaged in unfair methods of competition.

3. Subsections (3) and (10) of Section 101 of the Federal Aviation Act of 1958 (49 U.S.C. § 1301) read as follows:

(3) "Air carrier" means any citizen of the United States who undertakes, whether directly or indirectly or by a lease or any other arrangement, to engage in air transportation: *Provided,* That the Board may by order relieve air carriers who are not directly engaged in the operation of the aircraft in air transportation from the provisions of this chapter to the extent and for such periods as may be in the public interest.

\* \* \* \* \*

(10) "Air transportation" means interstate, overseas, or foreign air transportation or the transportation of mail by aircraft.

directly or by contract. From 1947 until the present ACI has functioned primarily as a contracting agent of the airlines; it cannot, and has not, engaged in the transportation of people or of cargo by air. Similarly, Ryder has never engaged in air transportation; its business is ground transportation. On the face of the Ryd-Air agreement it is obvious that neither of the signatories are "air carriers."

Defendants argue, however, that the airlines have become parties to the agreement arranging for the creation of Ryd-Air because ACI signed the document on behalf of the airlines as their agent, and thereby, in accord with well-understood principles of agency law, the airlines, as disclosed principals of their agent, became parties to the contract. Restatement of Agency 2d ¶ 144.

Although defendants urge this position in their briefs, we believe the facts demonstrate the opposite conclusion. Perhaps most importantly, there is no indication on the face of the Ryd-Air agreement that ACI signed it as an agent of the airlines. This is in contrast to the cartage contract, the second agreement involved here, in which, as well as in all prior cartage contracts, the language "as agent for and on behalf of the Air Carriers" appears on the face of the document. Furthermore, it seems obvious from the agreement of 1947 that ACI was given no authority to act on behalf of the airlines in a transaction such as the Ryd-Air agreement.[4] Indeed, the airlines primarily limited ACI to performing the functions of providing cartage and terminal services directly or by contract—functions which

4. Paragraph 7 of the Agreement defining the responsibilities of Air Cargo, Inc. reads as follows:

7. Each of the parties hereby confers upon Air Cargo, Inc. full power and authority, on its behalf, subject only to a limitation upon payment that may be due for services in the several amounts set forth hereinafter in this paragraph 7, to negotiate and execute agreements or arrangements (if and only if any such agreement or arrangement confers the right on the parties thereto and Air Cargo, Inc. to cancel the agreement or arrangement on not more than sixty days' notice), and to renew, modify, cancel, or terminate in accordance with the terms hereof, any existing arrangement, by or between any of the parties hereto and any other party or parties engaged in performing under contract pick-up and delivery or other services with respect to the handling of air freight, air cargo, or air express (including without limitation, the Air Express Agreement between the respective parties and the Railway Express Agency, Inc.), provided, however, that insofar as the foregoing delegates authority to cancel or terminate any existing arrangements which have heretofore been filed with and approved by the Civil Aeronautics Board, the exercise thereof shall be subject to either (a) approval of the cancellation or termination of such an existing arrangement by the Civil Aeronautics Board or (b) the approval of this agreement by the Civil Aeronautics Board.

It is agreed and understood in this connection that it is the purpose and intent of this agreement that Air Cargo Inc. should have responsibility for:

(a) Determining the date upon which each party hereto shall combine and operate as a single air cargo service its air express and airfreight services (which date shall be the same for all parties hereto), and shall make available to all shippers of air cargo, on an optional basis, such special services as may be practicable to meet shippers' requirements; and each of the parties will, on and after such date, take such action as may be appropriate to effect such objective;

(b) Providing, directly or by contract, pick-up and delivery services at all points within the continental United States served by any party hereto, and tripper services between such points and the airports through which they are served;

(c) Providing, directly or by contract, terminal facilities and services incidental to the proper handling of air freight and air cargo at all such points; and

(d) Providing, directly or by contract, clerical, accounting, and other services which may be desired by the parties hereto in the interest of promoting maximum efficiency, eliminating unnecessary duplication of expense, and coordination of their respective air freight and air cargo services with one another and with those rendered by other common carriers of property.

clearly do not include promoting a new corporation, owning stock in it, or sitting on its Board of Directors. Furthermore, there is no merit to defendants' argument that the airlines have "ratified" the agreement and thereby have become parties to it. Under the law of agency ratification can only occur when the principal, having knowledge of the material facts involved in a transaction, evidences an intention to ratify it. See Restatement of Agency 2d ¶¶ 91, 93–100. Here there is no evidence in the record that the airlines knew the material facts involved in the formation of Ryd-Air or that they communicated a desire to ratify its formation. Though, through their dealings with ACI, they dealt with Ryd-Air from 1970 forward, their dealings with ACI are insufficient as a matter of law to constitute a ratification of the creation by ACI and Ryder System of Ryd-Air or of the contract executed by ACI with Ryd-Air.

In view of our finding that the Ryd-Air agreement cannot be immunized by the Board because it is not signed by "air carriers," we find that there is no need to examine independently the cartage contract between Ryd-Air and ACI. As interdependent parts of an inclusive plan, it is clear that the fate of the plan rested on the fate of the Ryd-Air agreement. Accordingly, the district judge was correct in refusing to grant appellants' motion for a stay so as to permit presentation of the issues here to the CAB.

■■ Even if we were to find that the Board could immunize the agreements under its Section 412 authority, we would still conclude, on the basis of Carnation Co. v. Pacific Westbound Conference, 383 U.S. 213, 81 S.Ct. 781, 15 L.Ed.2d 709 (1966) and Allied Air Freight, Inc. v. Pan American World Airways, Inc., 393 F.2d 441 (2 Cir. 1968), cert. denied, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968), that the doctrine of primary jurisdiction is inapplicable. Under these authorities a district court is not required to defer to the Board except in those cases where the activities complained of are "lawful" or "arguably lawful" under the Federal Aviation Act of 1958. Also, when the only relief a plaintiff seeks in the district court is an award of damages, the district court need not defer to the Board irrespective of whether the activities are continuing activities or completed activities.[5] See Carnation Co. v. Pacific Westbound Conference, supra; Allied Air Freight, Inc. v. Pan American World Airways, Inc., supra, 393 F.2d at 448.

■ The agreement forming Ryd-Air has not been submitted to the Board and has not been explicitly approved by it. Although the claim is made in defendants' brief that the Ryd-Air agreement is "arguably lawful," the question of whether the agreement is "arguably lawful" is for the court to decide. To do so, the court must interpret, at least in the first instance, the order of 1947, to determine whether there is a factual basis to support the claim. Surely this is a task within the court's competence. See CAB v. Modern Air Transport, Inc., 179 F.2d 622, 625 (2 Cir. 1950); World Airways, Inc. v. Northeast Airlines, Inc.,

---

5. Although both *Carnation* and *Allied* dealt with activities which had been discontinued, the clear implication of the opinions is that the court has jurisdiction if the activities are unlawful under the regulatory statute and the relief sought is an award of damages. The rationale is that an award of damages could not interfere with a later agency decision prospectively to approve the continuance of the challenged activity, whereas injunctive relief could cause a conflict between the agency and the court. Thus, the Court in *Carnation* laid down the broad principle that courts are only precluded "from awarding treble damages when the defendants' conduct is arguably lawful . . . ." 383 U.S. at 222, 86 S.Ct. at 787. No distinction is drawn between continuing conduct and past conduct. Likewise, in *Allied*, we noted that a damage award could not interfere with cease and desist power or with immunization power inasmuch as the damage award would not have "prospective applicability." 393 F.2d at 448.

349 F.2d 1007 (1 Cir. 1965); cert. denied, 382 U.S. 984, 86 S.Ct. 561, 15 L.Ed.2d 473 (1966). *Compare* Pan American World Airways v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963). As we interpret the CAB order, it cannot possibly have comprehended the formation of Ryd-Air or approved its creation years after the issuance of the order. The carefully phrased "it having been represented" paragraph,[6] as well as the "future development" clause,[7] clearly evidence the Board's intention that the future activities of ACI were to be limited under the Order to those explicitly set out in the 1947 agreement. Manifestly, there is nothing in the agreement authorizing the promotion by ACI of a new company, the ownership of a stock interest in it, or the holding of seats by ACI nominees on a new corporation's Board of Directors. Defendant ACI suggests that since it can lawfully provide such services directly it certainly can provide such services by contracting with an affiliate in which it has a 20% stock interest. This misses the point. Although defendant has the authority to provide services directly it does not have the authority to provide such services indirectly through an ownership interest in a joint venture which it has not been authorized to promote or to participate in. The Board's 1947 approval of ACI merely authorizes its establishment and approves its then-contemplated activities which flow there-from. Trans World Airlines, Inc. v. Hughes, 332 F.2d 602 (2 Cir. 1964): see Federal Aviation Act 414, 49 U.S.C. § 1384.

Inasmuch as the two agreements have not been immunized and are not "arguably lawful" we agree with the district court that it should exercise its jurisdiction over this antitrust action.

 Finally, we see no need to direct the district court to stay, in its discretion, the proceedings in court pending administrative action by the CAB. The issues are not technical in nature, and there is no need to seek uniformity. *Compare* Trans World Airlines, Inc. v. Hughes, *supra,* with Pan American World Airways, Inc. v. United States, *supra.* Furthermore, the CAB cannot award damages, the only relief which the plaintiffs request. Apgar Travel Agency v. International Air Trans. Association, 107 F.Supp. 706, 711 (SDNY 1952); Slick Airways, Inc. v. American Airlines, Inc., 107 F.Supp. 199, 211 (D. N.J.1952). Whenever possible courts should avoid duplicated or drawn-out proceedings. The efficient administration of justice demands it. See Allied Air Freight, Inc. v. Pan American World Airways, Inc., *supra,* 393 F.2d at 445; Japan Line, Ltd. v. Sabre Shipping Corporation, 407 F.2d 173 (2 Cir.), cert. denied, 395 U.S. 922, 89 S.Ct. 1774, 23 L.Ed.2d 239 (1969).

Affirmed.

---

6. This paragraph reads as follows:
 . . . It having been represented to the Board that Air Cargo, Inc. will not have responsibility for nor control over, the rates, charges, rules, regulations, or practices applicable to air transportation; that it will not issue or sign any shipping contract or document except in the name of and as agent for a member air carrier party to the agreement; that it will not assume any responsibility to the consignor or con-signee of any property transported by air; and it will not hold itself out to the public to perform any service or accept any responsibility except as agent for a member air carrier party to the agreement; . . . .

7. This clause reads as follows:
 The Board further finding that the future development of Air Cargo, Inc. is uncertain and that its activities may require future reconsideration of the approval granted herein. . . .