**AIR FREIGHT HAULAGE CO., INC., Plaintiff,**

**v.**

**RYD–AIR, INC., et al., Defendants.**

**No. 71 Civ. 3428.**

United States District Court,
S. D. New York.

Feb. 24, 1976.

Raphael, Searles, Vischi, Scher, Glover & D'Elia, New York City, for plaintiff.

Cadwalader, Wickersham & Taft, New York City, for defendants Ryder System, Inc., and Ryd-Air, Inc.

Chadbourne, Parke, Whiteside & Wolff, New York City, for defendants Air Carriers and Air Cargo, Inc.; Harold L. Warner, Jr., Steven L. Cohen, New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

The defendant air carriers and Air Cargo, Inc.,[1] move for summary judgment dismissing the complaint, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the ground that the activities challenged in the complaint have been immunized from the antitrust laws by orders of the Civil Aeronautics Board (CAB) issued pursuant to Sections 412 and 414 of the Federal Aviation Act of 1958, 49 U.S.C. §§ 1382 and 1384.[2] The plaintiff cross-moves for summary judgment on the issue of liability.

The complaint charges that the defendants conspired to monopolize and unreasonably restrain the trucking of freight to and from major metropolitan New York City airports in violation of Sections One and Two of the Sherman Act, 15 U.S.C. §§ 1 and 2, and Section Seven of the Clayton Act, 15 U.S.C. § 18. Although the facts of this case are set forth in *Breen Air Freight, Ltd. v. Air Cargo, Inc.*, 470 F.2d 767 (2d Cir. 1972), *cert. denied*, 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973), a brief recapitulation is in order.

In 1947, the scheduled domestic air carriers, anxious to consolidate cartage services at the nation's airports, agreed that Air Cargo, Inc. (ACI) alone would provide, "directly or by contract," air freight and pick-up and delivery services for the airlines. (Memorandum of Air Carrier Defendants and Air Cargo, Inc., Exhibit A.) ACI, first established by the air carriers as a joint research corporation, is wholly-owned and controlled by the national airlines. The ACI agreement was filed with the Civil Aeronautics Board and, on December 31, 1947, the CAB approved the agreement in a memorandum order. (Memorandum of Air Carrier Defendants and ACI, Exhibit B.) Although in the earlier years the CAB specified in its order that it would require ACI to file its future cartage contracts for approval, in fact, in 1962, the Commission exempted ACI from further filing. However, CAB has insisted on reviewing all amendments subsequent to the 1947 agreement. (Memorandum of Air Carrier Defendants and Air Cargo, Inc., Bernhard Affidavit, pp. 3–4.)

In the New York City area, beginning in 1957, ACI contracted with three freight trucking companies, Breen Air Freight, Ltd., Mercury Air Freight, Inc., and Air Freight Haulage, the plaintiff in this action, to act as ACI's cartage agents. On September 30, 1970, these contracts were terminated. At the same time, ACI executed two agreements with defendants Ryder System, Inc. and Ryd-Air. These agreements constitute the basis of the antitrust complaint. In the first agreement, ACI and Ryder System provided for the formation of Ryd-Air, a subsidiary of Ryder that would provide cartage services in metropolitan New York City. As part of this agreement, ACI acquired twenty percent of the

---

1. Defendants Ryder System, Inc. and Ryd-Air, Inc. subsequently joined in the motion for summary judgment.

2. Under Section 1382 of Title 49, United States Code, the CAB is empowered to approve agreements among air carriers and air carriers and common carriers affecting air transportation. Section 1384 of Title 49 provides in pertinent part:

"Any person affected by an order made under sections 1378, 1379, or 1382 of this title shall be, and is hereby, relieved from the operations of the 'antitrust laws' . . . ."

stock of Ryd-Air and the right to nominate two of the five members of its Board of Directors. By the second agreement, Ryd-Air became ACI's exclusive air-freight cartage agent in New York City. This arrangement lasted three years. On October 1, 1973, ACI terminated its pickup and delivery contract with Ryd-Air and commenced its own direct operation.

Some time after their contracts had been terminated, Breen Air Freight, Ltd., and Mercury Air Freight, Inc., the plaintiff's companion cartage agents for ACI between 1957 and 1970, commenced an antitrust action against ACI, Ryder System, Ryd-Air and the airlines, all of whom are defendants in the present action. The defenses raised—as in the present case—were that the acts complained of had been immunized from antitrust claims by virtue of earlier CAB approval and that the primary jurisdiction over the subject matter resided in the CAB. The district court denied the defendants' motion to stay the action until such time as the CAB conducted administrative proceedings on the complaint. On an interlocutory appeal to the Second Circuit, the district court was affirmed—the doctrine of primary jurisdiction was held inapplicable in the circumstances. *Breen Air Freight, Ltd. v. Air Cargo, Inc., supra.* The defendants in the present case argue that the factual finding in *Breen* was erroneous and, further, that *Breen* was "reversed" by the Supreme Court's decision in *Hughes Tool Co. v. Trans World Airlines, Inc.,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973).

■ We find the reasoning of the *Breen* court persuasive. The agreement between ACI and Ryder System was

viewed by the Second Circuit as involving signatories who are not "air carriers." 470 F.2d at 771–72. Nor did the *Breen* court agree with the defendants' argument that the airlines became parties to the agreement because ACI signed the document on behalf of the airlines as their agent:

"Furthermore, it seems obvious from the agreement of 1947 that ACI was given no authority to act on behalf of the airlines in a transaction such as the Ryd-Air agreement. Indeed, the airlines primarily limited ACI to performing the functions of providing cartage and terminal services directly or by contract—functions which clearly do not include promoting a new corporation, owning stock in it, or sitting on its Board of Directors. Furthermore, there is no merit to defendants' argument that the airlines have 'ratified' the agreement and thereby have become parties to it. . . . Here there is no evidence in the record that the airlines knew the material facts involved in the formation of Ryd-Air or that they communicated a desire to ratify its formation." *Id.* at 772–73 (footnotes omitted).

Since the Ryder-ACI agreement was not signed by "air carriers," and since the airlines had not authorized or ratified ACI's participation in the formation of Ryd-Air, the agreement could not be immunized from the antitrust laws by the CAB, whose jurisdiction extends only to agreements involving air carriers.[3] 470 F.2d at 773.

The defendants in this case characterize the conclusion of the *Breen* court as "contrary to fact." (Memorandum of Air Carrier Defendants and Air Cargo, Inc., at 15.) Yet the defendants have failed to tender facts that contradict the

"any authority the Board might have to immunize the parties from antitrust proceedings must be a broad enough authority to encompass the right to administrative control over the effectuation of both of them." *Id.* at 771.

3. The second agreement, between ACI and Ryd-Air, was similar to the regular contracts in which the language "as agent for and on behalf of the Air Carriers" appears on the face of the document. *Breen Air Freight, Ltd. v. Air Cargo, Inc.,* 470 F.2d 767, 772 (2d Cir. 1972). However, the *Breen* court viewed the two agreements as "inseparable" and therefore

findings of the *Breen* court or that suggest a hearing would unearth information not available to the Second Circuit in *Breen*. The affidavit of Russell Bernhard, vice-president and general counsel to ACI, only indicates that the air carriers, dissatisfied with the service provided by ACI's cartage agents, requested ACI to arrange for a single contractor to handle the carting operations. (Memorandum of Air Carrier Defendants and Air Cargo, Inc., Bernhard Affidavit, at 9–10.) Nothing in the affidavit, apparently the sole basis for the argument made by the defendants on this point, suggests that the airlines were aware of the details of the ACI–Ryder System agreement or that they communicated a desire to ratify the formation of Ryd-Air. In the absence of new information to suggest that the defendants' agency theory is any more viable now than when *Breen* was decided, there is no basis for departing from the *Breen* ruling or for a hearing on this issue.

The *Breen* panel also concluded that, even if the CAB could immunize the ACI–Ryd-Air agreement, the doctrine of primary jurisdiction was inapplicable since the 1947 CAB order could not possibly

> "have comprehended the formation of Ryd-Air or approved its creation years after the issuance of the order. . . . Manifestly, there is nothing in the agreement authorizing the promotion by ACI of a new company, the ownership of a stock interest in it, or the holding of seats by ACI nominees on a new corporation's Board of Directors. . . . Although defendant has the authority to provide services directly it does not have the authority to provide such services indirectly through an ownership interest in a joint venture which it has not been authorized to promote or to participate in. The Board's 1947 approval of ACI merely authorizes its establishment and approves its then contemplated activities which flow therefrom. *Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602 (2 Cir. 1964)." 470 F.2d at 774.

The defendants argue that this portion of the *Breen* opinion, premised on the Second Circuit's 1964 decision in *Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602 (hereinafter referred to as *Hughes*) has been undermined by the Supreme Court's decision in *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973) (hereinafter referred to as *Hughes Tool Co.*) In *Hughes Tool Co.*, the Supreme Court reversed the 1964 holding of the Second Circuit in *Hughes*. An examination of the Supreme Court's decision in *Hughes Tool Co.*, however, reveals nothing that supports the defendants' assertion that the premises on which *Breen* was decided have been eroded.

*Hughes Tool Co.* was an antitrust action brought by TWA against the Hughes Tool Company, a corporation owned by Howard Hughes that had acquired control of TWA. The "crux of TWA's complaint was the use by Toolco of its control over TWA to control and dictate the manner and method by which TWA acquired aircraft and the necessary financing thereof." 409 U.S. at 366, 93 S.Ct. at 650. The Supreme Court held that, since Toolco's dealings with TWA had been under the surveillance of the CAB, those transactions were immunized from the antitrust laws. The critical factor in *Hughes Tool Co.* was that every transaction, including methods of financing, that formed the basis of the antitrust complaint required CAB approval and, indeed, such approval was granted. 409 U.S. at 379, 93 S.Ct. 647. See *Aloha Airlines, Inc. v. Hawaiian Airlines, Inc.*, 489 F.2d 203, 207–08 (9th Cir. 1973), *cert. denied*, 417 U.S. 913, 94 S.Ct. 2612, 41 L.Ed.2d 217 (1974).

In the case at hand, the defendants have neither sought nor received CAB approval for the transactions with Ryder System and Ryd-Air. As the *Breen* court quite correctly pointed out, the 1947 agreement, which *was* approved by the CAB, did not (indeed could not) contemplate the financial arrangement subsequently entered into by ACI and Ryd-Air. 470 F.2d at 774. Nor did the 1947

order impliedly grant, as defendants claim, "sweeping authority" to ACI in its handling of cartage contracts. To the contrary, the 1947 order specifically cautioned that "the future development of Air Cargo, Inc. is uncertain and that its activities may require future reconsideration of the approval granted herein." (Memorandum of Air Carrier Defendants and Air Cargo, Inc., Exhibit B.)

To determine the extent to which the CAB approval resulted in antitrust immunity, the Court of Appeals in *Breen* made the very type of inquiry suggested by the *Hughes Tool Co.* opinion, *i. e.*, whether "CAB specifically authorize[d] as in the public interest specific transactions . . . ." 409 U.S. at 389, 93 S.Ct. at 662. In *Breen*, since specific authorization for ACI's arrangement with Ryder System had not been granted, the Second Circuit held that the CAB had not immunized the defendants' activities. We reach the same conclusion in this case and, accordingly, decline to relinquish jurisdiction over this antitrust action.

■ The plaintiff also cross-moves for summary judgment on the merits. This motion is denied. The briefs and supporting affidavits and materials of both parties focus almost exclusively on the issue of primary jurisdiction. But more importantly, the papers fail to deal with such material issues of fact necessary to the resolution of an antitrust suit as the actual impact of the alleged antitrust activities on the airline cartage industry in the New York City area and the resulting loss, if any, to the plaintiff from termination of its contract with ACI. At this stage of the proceeding summary judgment is inappropriate. See *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Seligson v. New York Produce Exchange*, 378 F.Supp. 1076, 1092–93 (S.D.N.Y.1974). In denying the motions for summary judgment, we, of course, intimate no view as to the merits of the case.

For the reasons stated above, the motions for summary judgment are denied. It is so ordered.