Jim CAIN et al., Appellant,

v.

AIR CARGO, INC. et al., Appellee.

No. 77–1461.

United States Court of Appeals,
Ninth Circuit.

June 26, 1979.

Harrison W. Hertzberg, David S. Koslow, and Don Erik Franzen (argued), of Hertzberg, Koslow & Franzen, Los Angeles, Cal., for appellant.

Russell S. Bernhard (argued), of Macleay, Lynch, Bernhard & Gregg, Washington, D. C., Theodore W. Russell, of Russell, Schureman & Hancock, Los Angeles, Cal., for appellee.

Before GOODWIN and TANG, Circuit Judges, and EAST,* District Judge.

GOODWIN, Circuit Judge:

Plaintiffs appeal from summary judgment in favor of defendants Air Cargo, Inc. ("ACI"), and City Freight Lines ("City Freight") in an antitrust action with pendent claims under California state law and the Fourteenth Amendment. We affirm the summary judgment disposing of the pendent claims, but reverse and reinstate the claims under the Sherman and Clayton Acts, 15 U.S.C. §§ 1 et seq.

Plaintiffs are independent truckers operating in the Los Angeles area, exempt from Interstate Commerce Commission (ICC) regulation under 49 U.S.C. § 303(b)(8) as commercial-zone haulers. Defendant ACI is a corporation organized in 1947 by an agreement among 17 national air carriers,[1] who established ACI as their agent to provide ground freight service to and from airports they serve incident to air freight carriage. The agreement empowered ACI to provide the cartage service itself, or to contract with local haulers for the service.[2]

Under Section 412 of the Federal Aviation Act of 1958 (49 U.S.C. § 1382),[3] the Civil Aeronautics Board (CAB) approved the 1947 agreement establishing ACI (CAB Agreement No. 1041). Rather than provide the service itself, ACI has usually chosen to contract with a single local hauler at each airport to provide cartage to and from the airlines. ACI's stock is owned by the member airlines, and its revenues are derived from a flat fee collected on each shipment carried by the contract trucker. Until 1962, the CAB also approved under Section 412 the standard form agreement that ACI negotiates with local truckers; the CAB dropped its filing requirement in 1962.[4]

Award of an ACI contract does not guarantee to a contractor all of the trucking

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Since incorporation, ACI has grown to include 29 member airlines.

2. "It is agreed and understood in this connection that it is the purpose and intent of this agreement that Air Cargo, Inc. should have responsibility for:

\* \* \* \* \* \*

"Providing, directly or by contract, pick-up and delivery services at all points within the continental United States served by any party hereto \* \* \*."

3. 49 U.S.C. § 1382 states:

"(a) Every air carrier shall file with the Board a true copy, or, if oral, a true and complete memorandum, of every contract or agreement (whether enforceable by provisions for liquidated damages, penalties, bonds, or otherwise) affecting air transportation and in force on the effective date of this section or hereafter entered into, or any modification or cancellation thereof, between such air carrier and any other air carrier, foreign air carrier, or other carrier for pooling or apportioning earnings, losses, traffic, service, or equipment, or relating to the establishment of transportation rates, fares, charges, or classifications, or for preserving and improving safety, economy, and efficiency of operation, or for controlling, regulating, preventing, or otherwise eliminating destructive, oppressive, or wasteful competition, or for regulating stops, schedules, and character of service, or for other cooperative working arrangements.

"(b) The Board shall by order disapprove any such contract or agreement, whether or not previously approved by it, that it finds to be adverse to the public interest, or in violation of this chapter, and shall by order approve any such contract or agreement, or any modification or cancellation thereof, that it does not find to be adverse to the public interest, or in violation of this chapter \* \*."

4. For further details of ACI's organization and the CAB's approval, see Scroggins v. Air Cargo, Inc., 534 F.2d 1124, 1126–28 (5th Cir. 1976); Big Bear Cartage, Inc. v. Air Cargo, Inc., 419 F.Supp. 982, 983–85 (N.D.Ill.1976).

business incident to airline freight carriage. To arrange shipment of his goods to the airport, a shipper is free to call local carriers, like plaintiffs, who do not have an ACI contract. If the shipper calls an airline to arrange shipment, however, the order is routed through ACI to its designated carrier. When the goods arrive at the destination airport after air shipment, they will be delivered locally by the ACI carrier at the other end, except in the rare case where the shipper has arranged for a different local trucker to pick up the goods in the destination city.

The ACI contract thus ensures for its holder a large volume of airport hauling. In the instant case, for example, ACI until 1975 had contracts for cartage in the closest zones surrounding Los Angeles International Airport with two truckers, City Freight and Atlantic Transfer Company ("Atlantic"). The contracts, plaintiffs assert, gave the two companies a total of almost 100 percent of the hauling from the airport and 80 percent of the cartage to the airport related to air shipment. The independent truckers with whom City Freight and Atlantic competed, such as plaintiffs here, together had the other 20 percent of the business going to the airport.

In 1975, because of financial reverses suffered by its parent corporation, Atlantic was sold to City Freight. The sale did not include Atlantic's current ACI contract, but shortly thereafter ACI awarded the Atlantic contract to City Freight's new "Atlantic Transfer Division", as City Freight renamed Atlantic after the purchase. Thus City Freight alone now carries some 80 percent of the ground freight to the Los Angeles airport and practically all of that leaving it, incident to air freight shipment.

Following ACI's award of the Atlantic contract to City Freight, plaintiff indepen-dent truckers brought suit against City Freight and ACI. The complaint charges ACI and City Freight with conspiratorial refusal to deal and exclusive dealing, in violation of Section 1 of the Sherman Act; City Freight with attempt to monopolize and monopolization, under Section 2 of the Sherman Act, and illegal acquisition of Atlantic under Section 7 of the Clayton Act; and ACI with violation of "California common law" and of Fourteenth Amendment due process.

The district court concluded, as a matter of law, that both ACI and City Freight were immune from antitrust liability under Section 414 of the Federal Aviation Act (49 U.S.C. § 1384),[5] because the CAB had approved Agreement No. 1041 under Section 412. The judge also concluded that Section 414 immunized defendants' actions from state law claims, and that plaintiffs had no claim under the Fourteenth Amendment, as no state action was involved.

Plaintiffs objected that summary judgment was untimely. Had summary judgment not cut short discovery, they claim, they could have shown several antitrust violations on ACI's and City Freight's parts. They contend that City Freight only acquired Atlantic because of ACI's assurance that it would not award Atlantic's contract to a competing trucker; that ACI and City Freight had a mutual financial interest in assuring that the Atlantic contract was not awarded to a competitor of City Freight; and that the acquisition and contract award were undertaken by ACI and City Freight "with the conscious and parallel intent to lock up the existing Atlantic customers and maintain those customers as ACI accounts and to foreclose the independents from their opportunity to compete for Atlantic's share of the relevant markets."

---

**5.** 49 U.S.C. § 1384 states:

"Any person affected by any order made under sections 1378, 1379, or 1382 of this title shall be, and is hereby, relieved from the operations of the 'antitrust laws', as designated in section 12 of Title 15, and of all other restraints or prohibitions made by, or imposed under, authority of law, insofar as may be necessary to enable such person to do anything authorized, approved, or required by such order."

## I.

We consider first the district court's holding that ACI and City Freight are together immunized from plaintiffs' Section 1 Sherman Act claims by Sections 412 and 414 of the Federal Aviation Act. Plaintiffs' complaint is the latest in a lengthening line of antitrust attacks on the operations of ACI in awarding its local contracts to a single trucker. *See, e. g., Scroggins v. Air Cargo, Inc.,* 534 F.2d 1124 (5th Cir. 1976); *Big Bear Cartage, Inc. v. Air Cargo, Inc.,* 419 F.Supp. 982 (N.D.Ill.1976); *Air Freight Haulage of Puerto Rico, Inc. v. American Airlines, Inc.,* 414 F.Supp. 1043 (D.P.R.1976), *aff'd,* 559 F.2d 1200 (1st Cir. 1977). In each case, the courts have held that Sections 412 and 414 shield both ACI and its contractor from antitrust scrutiny when the issue is solely ACI's award of a contract.[6] Thus ACI may switch contractors (*Scroggins*) or may simply refuse to consider applications for a contract (*Big Bear*).

Sections 412 and 414 and the decisions construing these sections protected ACI and City Freight in the award of the Atlantic contract. Plaintiffs recognize that ACI was free at all times to revoke and re-award Atlantic's contract, and to refuse to deal with plaintiff truckers, without fear of antitrust liability. But, citing *Breen Air Freight, Ltd. v. Air Cargo, Inc.,* 470 F.2d 767 (2d Cir. 1972), *cert. denied,* 411 U.S. 982, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973), plaintiffs contend that ACI in this case did more than change contractors. Defendants allegedly went beyond the scope of the agreement approved by the CAB under Section 412, and thus lost their Section 414 immunity.

In *Breen,* the ACI had refused to renew plaintiffs' contract. Instead, it awarded the sole contract for the area to a newly-formed corporation, Ryd-Air, in which ACI shared both the equity and the seats on the board of directors with a trucking competitor of plaintiffs. The Second Circuit held that the airlines' 1947 agreement did not empower ACI to organize and operate new firms, and hence that ACI was not acting as an agent of the airlines when it did so. Therefore, neither ACI nor Ryd-Air was an "air carrier" under Section 412 and immunity did not attach. *See also Air Freight Haulage Co. v. Ryd-Air, Inc.,* 408 F.Supp. 446 (S.D.N.Y.1976); Note, Air Carriers— Anti-Trust Immunity, 39 J. Air L. & Comm. 453 (1973).

ACI thus acted differently in *Breen* than it did in *Scroggins, Big Bear,* or *Air Freight Haulage of Puerto Rico.* In *Breen,* prior to awarding the contract, ACI involved itself in the horizontal organization of the freight-hauling industry by affiliating with plaintiffs' competitor to establish its own trucking firm. This distinguishes *Breen* from the other cases, where ACI was involved only vertically as the contract agent between the airlines and truckers. The cases together hold that while ACI is free to award its contracts as it will, the CAB approval under Section 412 does not extend to ACI's activities to affect the organization of the trucking industry itself. Section 414 cannot immunize conduct that is not contemplated by the agreement that the CAB approved.

Plaintiff charges that ACI's actions here are akin to those in *Breen.* When Atlantic's parent corporation foundered, plaintiff maintains, an independent trucker would have purchased Atlantic but for ACI's guarantee of the Atlantic contract to City Freight. Atlantic had substantial goodwill built up in its name after some 25 years of operation, and ACI supposedly found it advantageous to keep the Atlantic name and its contract together, since the more shippers used Atlantic the greater the fees collected by ACI. Thus ACI allegedly agreed to award the contract to City Freight on condition that City Freight acquire Atlantic.

We agree with plaintiffs that this is the sort of horizontal interference in the truck-

---

6. Neither ACI nor its contractor is an "air carrier" as that term is used in Section 412, but ACI contracts as an agent for the airlines, so the terms of Section 412 are met. *See Air Freight Haulage of Puerto Rico, Inc. v. American Airlines, Inc.,* 414 F.Supp. at 1046–47.

ing industry that exceeds ACI's CAB-approved mandate to provide "pickup and delivery services". ACI's right to re-award the Atlantic contract, even to City Freight, is unchallenged. But its guarantee of the contract to City Freight only on condition that the latter acquire Atlantic (again accepting plaintiffs' version of the facts) meant that Atlantic's assets were more valuable to City Freight than they were to any other prospective purchaser, who could not be sure that the contract would be awarded to him after the acquisition.

In other words, the plaintiffs allege that ACI caused City Freight, a leader in the field, to acquire its chief competitor. It is true that, if Atlantic had been bought by someone other than City Freight, ACI could have awarded the Atlantic contract to the purchaser, or given it to City Freight in its discretion.[7] But that hypothesis is immaterial. If plaintiffs can show that ACI had an interest in City Freight's acquiring Atlantic, and that it instigated the acquisition, then, under *Breen*, ACI's activities exceeded the scope of the CAB's approval, and Section 414 confers no immunity. The CAB approval encompassed the award of ACI's contract, but not the use of the contract to induce one firm to acquire its chief competitor.

If, however, ACI merely awarded the contract after City Freight acquired Atlantic, its conduct would have been within the range of activities approved under Section 412 and thereby immunized. Plaintiffs' evidentiary burden is heavy, but they are entitled to try to make their case.[8]

The distinction on which we rely, as explained in *Breen* and the other cases cited above, is admittedly fine. But we believe that it comports with the general rules concerning antitrust immunity for activities within the purview of agency regulation. We have noted that immunity from the antitrust laws is not lightly inferred. *Mt. Hood Stages, Inc. v. Greyhound Corp.*, 555 F.2d 687, 693 (9th Cir. 1977), *rev'd on other grounds*, 437 U.S. 322, 98 S.Ct. 2370, 57 L.Ed.2d 239 (1978); *Aloha Airlines, Inc. v. Hawaiian Airlines, Inc.*, 489 F.2d 203, 206 (9th Cir. 1973), *cert. denied*, 417 U.S. 913, 94 S.Ct. 2612, 41 L.Ed.2d 217 (1974). Immunity of regulated activities from the antitrust laws depends on congressional intent: the inclusion of an express statutory exemption such as that in Sections 412 and 414 implies that conduct not covered by the statute remains subject to the antitrust laws. *Carnation Co. v. Pacific Westbound Conference*, 383 U.S. 213, 216–17, 86 S.Ct. 781, 15 L.Ed.2d 709, *modified*, 383 U.S. 982, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966); *Mt. Hood Stages, Inc. v. Greyhound Corp.*, 555 F.2d at 691.

For the courts to infer an antitrust exemption, it is not enough that the conduct at issue be merely within a regulatory agency's jurisdiction. The courts will not infer immunity "without first determining that exemption was necessary in order to make the regulatory Act work, 'and even then only to the minimum extent necessary.'" *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 597, 96 S.Ct. 3110, 3121, 49 L.Ed.2d 1141 (1976), *quoting Silver v. New York Stock Exchange*, 373 U.S. 341, 357, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963).

ACI has allegedly acted so as to influence the organization of the local trucking industry in Los Angeles. Exemption of the chal-

7. This was the district judge's rationale for summary judgment: "If the ACI could contract with Atlantic, as they could and did, if Atlantic goes under they can replace their contract with somebody else. They can do it directly with City Freight Lines; they can do it with another division of City Freight Lines."

8. Assuming that plaintiffs can establish the important facts discussed here, we of course express no opinion on the merits of their antitrust claims. *Compare Air Freight Haulage Co. v.*

*Ryd-Air, Inc.*, 408 F.Supp. 446 (S.D.N.Y.1976) (denying summary judgment on claimed immunity from antitrust laws), *with Air Freight Haulage Co. v. Ryd-Air, Inc.*, 1978–2 Trade Cases (CCH) ¶ 62,321, *aff'd*, No. 78–7557 (2d Cir., filed Apr. 6, 1979) (finding no antitrust violations, after trial on merits). We note also that while summary judgment was not appropriate at the outset of discovery, it may be at a later point, when discovery has proceeded further.

lenged conduct is hardly necessary for the CAB to regulate the airlines, or for ACI to represent the airlines as their contracting agent for local hauling. The plain repugnancy between the antitrust and regulatory provisions required for the implication of immunity is not present here. *Gordon v. New York Stock Exchange, Inc.*, 422 U.S. 659, 682, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975) (citing cases).

## II.

Plaintiffs also charge City Freight with attempted monopolization and monopoly under Section 2 of the Sherman Act (15 U.S.C. § 2) and with acquisition of Atlantic in violation of Section 7 of the Clayton Act (15 U.S.C. § 18). City Freight defends by noting that Section 414 of the Federal Aviation Act immunizes "[a]ny person affected" by a Section 412 order, including ACI's contractors.

■ The Clayton Act claim implicates only City Freight's acquisition of Atlantic, and has nothing to do with the award of the ACI contract. It thus cannot be immunized by Sections 412 and 414, as no air carrier is involved. The Section 2 Sherman Act claim, however, is based solely on City Freight's attempting to secure and securing the ACI contract, which allegedly now gives City Freight a monopoly of the ground freight business incident to air shipment into and out of Los Angeles International Airport. As explained in section I, the award of the contract under the circumstances alleged by plaintiffs would not be immunized under Section 414. It was erroneous to cut short discovery, because the

ruling did not permit plaintiffs to try to establish the factual basis for their claim. If plaintiffs have correctly characterized ACI's and City Freight's activities, Section 414 confers no immunity on City Freight.[9]

## III.

Because of ACI's "monopolistic position" in the air transportation industry, plaintiffs maintain, it is subject to "the California common law principle requiring [an organization] to refrain from arbitrary action." Any monopoly that ACI has, however, was approved by the CAB under a federal statute explicitly permitting such pooling arrangements when approved. The arbitrary action of which plaintiffs complain is simply ACI's refusal to consider plaintiffs for its contracts. As discussed in section I, this is precisely the conduct approved under Section 412. *Scroggins v. Air Cargo, Inc., supra; Big Bear Cartage, Inc. v. Air Cargo, Inc., supra.*

■ Section 414 immunizes ACI not just from the anti-trust laws, but also from "all other restraints or prohibitions made by, or imposed under, authority of law". Plaintiffs cite no case holding that state "common law" overrides Section 414.[10] Award of summary judgment on plaintiffs' state law claim was proper.

## IV.

Finding no state action, the district court granted summary judgment in favor of ACI on plaintiffs' Fourteenth Amendment claim. Plaintiffs admit on appeal that there is no state action implicated, but urge that ACI has violated the due process clause

---

**9.** Again, we pass no judgment on the merits of plaintiffs' antitrust claims. See note 8 *supra.*

Plaintiffs also allege that City Freight violated the antitrust laws by causing the ICC erroneously to notify hundreds of independent truckers that their activities were no longer exempt from regulation, leading the truckers to lease their equipment to City Freight and so reducing the number of competitors. It is not clear whether these allegations are in support of the Sherman or Clayton Act claims, but because the challenged conduct involved only City Freight, not ACI, it cannot be immunized under Sections 412 and 414.

**10.** Plaintiffs rely on *Pinsker v. Pacific Coast Society of Orthodontists*, 1 Cal.3d 160, 81 Cal. Rptr. 623, 460 P.2d 495 (1969), and *Pinsker v. Pacific Coast Society of Orthodontists*, 12 Cal.3d 541, 116 Cal.Rptr. 245, 526 P.2d 253 (1974), whose facts are quite distinct from those here. In both cases, Pinsker sued a professional association, and the holdings concern the duty under California law of such an association to an individual member or would-be member. There is no professional association involved here, nor was there a federal statute conferring immunity on the defendant in either *Pinsker* case.

of the Fifth Amendment. We decline to consider this new claim, as it was not raised below. *Boire v. Miami Herald Publishing Co.*, 343 F.2d 17, 25 (5th Cir.), *cert. denied*, 382 U.S. 824, 86 S.Ct. 56, 15 L.Ed.2d 70 (1965).

### V.

In conclusion, we affirm the summary judgment on the state and Fourteenth Amendment claims, but reverse on the antitrust claims against ACI and City Freight. To repeat, we have considered only whether defendants' conduct was statutorily immune. If plaintiffs are unable to show, after discovery, that ACI did more than award Atlantic's contract to City Freight, summary judgment in favor of ACI and City Freight would then be appropriate on all antitrust claims except that against City Freight under 15 U.S.C. § 18. But plaintiffs are entitled to proceed with discovery to elicit the facts they claim will show that defendants acted beyond the scope of Section 412.

Affirmed in part, reversed in part, and remanded.