INTERSTATE COMMERCE COMMISSION, Plaintiff-Appellant,

v.

ALL–AMERICAN, INC., Defendant-Appellee.

No. 74–1019.

United States Court of Appeals, Seventh Circuit.

Argued June 5, 1974.

Decided Nov. 4, 1974.

Bernard A. Gould and Robert S. Turkington, I. C. C., Washington, D. C., Miles L. Kavaller and Edward D. Greenberg, Chicago, Ill., for plaintiff-appellant.

Joel H. Steiner, Chicago, Ill., for defendant-appellee.

Before CLARK* Associate Justice, and FAIRCHILD and STEVENS, Circuit Judges.

FAIRCHILD, Circuit Judge.

This action was instituted in the district court by the appellant Interstate Commerce Commission under 49 U.S.C. § 322(b)(1),[1] seeking to enjoin appellee All-American, Inc., a motor carrier engaged in the transportation of property in interstate or foreign commerce pursuant to certificates of public convenience and necessity issued by the Commission, from extending credit to shippers who it knows, or should know, will not pay its tariff charges within a seven day period from the date of presentation of the freight bill in violation of Section 223 of the Interstate Commerce Act (49 U.S.C. § 323) and Section 1322.1 of Title 49 of the Code of Federal Regulations.[2] The

---

* Associate Justice Tom C. Clark, United States Supreme Court (Ret.) is sitting by designation.

1. Section 322(b)(1) provides in pertinent part as follows:
"If any motor carrier or broker operates in violation of any provision of this chapter (except as to the reasonableness of rates, fares, or charges and the discriminatory character thereof), or any lawful rule, regulation, requirement, or order promulgated by the Commission, or of any term or condition of any certificate or permit, the Commission or its duly authorized agent may apply for the enforcement thereof to the district court of the United States for any district where such motor carrier or broker operates. . . ."

2. Section 323 provides in pertinent part as follows:
"No common carrier by motor vehicle shall deliver or relinquish possession at destination of any freight transported by it in interstate or foreign commerce until all tariff rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges, including rules and regulations for weekly or monthly settlement, and to prevent unjust discrimination or undue preference or prejudice . . .."

Section 1322.1 of Title 49 C.F.R. provides in pertinent part:
Carrier may extend credit to shipper.
(a) Extension of credit. Upon taking precautions deemed by them to be sufficient to

**1362**

Commission further sought to prevent All-American from providing credit until it had taken precautions sufficient to assure payment of its tariff charges within such seven day period as required by the regulation. All-American filed a motion to dismiss the Commission's amended complaint and the district court entered an order granting the motion. It is from that order that the Commission appeals. We reverse.

The district court, in its order dismissing the Commission's amended complaint, relied upon the doctrine of primary jurisdiction, ruling that, despite a clear grant of jurisdiction to the court to enforce I.C.C. regulations in 49 U.S.C. § 322(b)(1), "the power should not be exercised when technical questions of fact involving administrative expertise are involved." Concluding that the regulation in question raised many technical questions in interpretation and application, the court found that "scrutiny by the Commission's expertise is clearly required before this court should attempt to exercise its power by an injunction."

■ The doctrine of primary jurisdiction determines whether the federal court will refrain from exercising its unquestioned jurisdiction over a dispute until after an administrative agency has resolved some question arising in the proceeding before the court. It represents a recognition of the need for an orderly coordination between the functions of court and agency in securing the objectives of their often overlapping competency. Far East Conference v. United States, 342 U.S. 570, 575, 72 S. Ct. 492, 96 L.Ed. 576 (1952). The doctrine, first enunciated in Texas & Pacific R. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), has been developed and refined in subsequent decisions. "[I]n cases raising issues of fact not within the conventional

experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." Far East Conference v. United States, supra, 342 U.S. at 574, 72 S.Ct. at 494. "Primary jurisdiction . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. . . ." United States v. Western P.R. Co., 352 U.S. 59, 64–65, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

■ An examination of the complaint in the instant proceeding persuades us of the inapplicability of the doctrine to the present dispute. "[T]he question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application." United States v. Western P.R. Co., supra, at p. 64, 77 S.Ct. at p. 165. Initially, we note that the Commission itself is a party to the dispute and has brought the action in the district court to enforce its regulation. Ordinarily, the doctrine of primary jurisdiction attaches in instances where the case is taken into the courts without any direct involvement of the administrative agency. It has been suggested by one commentator that, in cases where the appropriate administrative body is before the court, the doctrine should not apply since a principal function of the rule, acquainting the court with the agency's position concerning the matter, has been satisfied. Davis, Administrative Law Treatise, Volume 3, § 19.02, p. 14, note 41 (1951). "Therefore, the doctrine does not apply when the agency itself is plaintiff." C.A.B. v. Aeromatic Travel Corp., 489 F.2d 251 (2d Cir.

---

assure payment of the tariff charges within the credit period herein specified, common carriers by motor vehicle may relinquish possession of freight in advance of the payment of the tariff charges thereon and may

extend credit in the amount of such charges to those who undertake to pay them, such persons herein being called shippers, for a period of 7 days excluding Saturdays, Sundays, and legal holidays. . . ."

1974). In the present case, the Commission has considered what action it should follow and has determined to pursue a judicial rather than administrative procedure. This provides strong indication of the Commission's view as to the necessity of administrative fact finding or expertise. *Cf.* Civil Aeronautics Board v. Modern Air Transport, 179 F. 2d 622, 625 (2nd Cir. 1950).

Further, it is clear that the reasons for the existence of the doctrine and the purposes it serves do not support its application in a proceeding brought by an agency to enjoin further violations of a valid rule or regulation. See, Texas & P.R. Co. v. Gulf C. & S.F.R. Co., 270 U. S. 266, 271–273, 46 S.Ct. 263, 70 L.Ed. 578 (1926); Pennsylvania R. Co. v. International Coal Co., 230 U.S. 184, 197, 33 S.Ct. 893, 57 L.Ed. 1446 (1913). "[T]his doctrine is not applicable where the issue, regardless of its complexity, is not the reasonableness of the rate or rule, but a violation of such rate or rule. Thus it has been continuously asserted that courts have original jurisdiction to interpret tariffs, rules, and practices where the issue is one of violation, rather than reasonableness." Civil Aeronautics Board v. Modern Air Transport, Inc., *supra,* 179 F.2d at p. 624. See also, Jaffe, Primary Jurisdiction, 77 Harv.L. Rev. 1037, 1042 (1964).

Moreover, the statutory scheme involved in the present proceeding is clear, and any difficulties presented the court in its construction are amenable to traditional judicial processes. 49 U.S.C. § 323 precludes common carriers from extending credit on delivery of goods unless Commission rules and regulations are complied with. 49 C.F.R. § 1322.1, the relevant Commission regulation, permits the extension of credit by the carrier only "upon taking precautions deemed by them to be sufficient" to assure payment of the tariff charges with-

in a seven day period from the presentation of the freight bill.

These are not novel, unique, or unduly technical regulations requiring the administrative expertise or discretionary action of the Commission. The statutory provision in question has been enacted as law since 1935, and is substantially identical in its substantive provisions with 49 U.S.C. § 3(2), governing the extension of credit to shippers by railroads, first enacted in 1920. Similarly, the requirement of "precaution deemed by them to be sufficient" has been a part of the Commission regulations concerning credit since their inception.[3] Examination and review of the relevant Commission expressions concerning the extension of credit to shippers by railroads and motor carriers during this period provides a familar method of construction and resolution available to the district court.[4] We agree with the Tenth Circuit, which held in an action to enforce the credit regulations under the civil forfeiture provisions of 49 U.S.C. §§ 16(8), (9):

> The statute and the rules are exercises in futility unless some means is provided for enforcement. Section 16(8) and (9) provide the means. The statutory method of enforcement may not be avoided by the assertion that the Commission, before it invokes § 16(8) must adjudicate specific rights and responsibilities in specific instances. United States v. Western P.R. Co., 385 F.2d 161, 163 (10th Cir. 1967), cert. denied, 391 U.S. 919, 88 S.Ct. 1805, 20 L.Ed.2d 656 (1968).

All-American seeks to avoid this result by urging that the Commission itself has indicated that credit transactions such as the present are of the sort which must be resolved through agency discretion and fact finding. First, relying upon Ex Parte No. 73—Regulations for Payment of Rates and Charges, 326

3. See, Ex Parte 73, Regulations for Payment of Rates and Charges, 57 I.C.C. 591, 596 (1920); Ex Parte No. MC–1, Payment of Rates and Charges of Motor Carriers, 2 M. C.C. 365, 378 (1937).

4. See, *e. g.,* General Orders, F.Carr.Cas., ¶ 23,009 (1936); Ex Parte No. 73, 57 I.C.C. 591 (1920); Glama Dress Co. v. Mid-South Transport, Inc., 335 I.C C. 586 (1969); Ex Parte No. 73, 326 I.C.C. 483 (1966).

I.C.C. 483 (1966), an administrative proceeding conducted to consider modification of the rules and regulations governing the extension of credit by motor carriers and railroads, it is argued that the Commission has rejected the sort of relief sought in the district court in favor of a more flexible agency examination. While there is similarity between the relief requested below and the proposed rules modifications rejected by the Commission in *Ex Parte No. 73*,[5] such a conclusion would place this court in the anomalous position of asserting that the Commission, through its Bureau of Enforcement, was purposely violating its own standards and procedures. We assume unity of action and intention within the Commission when a proceeding is brought to enforce a rule or regulation. If the Commission is dissatisfied with the actions taken by its Bureau of Enforcement, it, rather than the courts, may act to require conformity with its requirements and expectations.

Second, All-American argues that the Commission's reopening of *Ex Parte No. 73, supra,* and Ex Parte No. MC–1—Payment of Rates and Charges for Motor Carriers, 38 F.R. 7820, establishes that the resolution of credit regulation disputes lies exclusively within the Commission's rule-making function. Such an argument fails to discern the distinction between rule making and rule enforcement. While concededly the Commission enjoys the power to promulgate regulations concerning motor carriers and railroads, this power does not detract from or diminish its authority to enforce the provisions of the Interstate Commerce Act and regulations adopted pursuant thereto. Congress has provided the Commission with appropriate enforcement mechanisms. (Cf. 49 U.S. C. § 322) and the institution of actions for injunctive relief in the district court is one (49 U.S.C. § 322(b)). Reopening rule making proceedings does not sus-

pend or limit this power and, in the instant case, the Commission, through its Bureau of Enforcement, has determined to pursue judicial action. Again, we accept the determination of the agency in this matter. A remand to it for further consideration would be fruitless.

For the foregoing reasons, the judgment appealed from is reversed and the cause is remanded for further proceedings consistent with this opinion.

---

5. The relief requested in this action is, however, less extensive than the proposal discussed in Ex Parte 73, 326 I.C.C. 483 in that no demand is made that All-American place shippers on a cash basis or require that it seek written assurance from a formerly defaulting shipper before resuming credit transactions.