**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Richard ELROD, Sheriff, Cook County,
et al., Defendants-Appellees.**

No. 79–1394.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1979.

Decided Aug. 4, 1980.

Dennis J. Dimsey, Civil Rights Division, U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Ellen G. Robinson, Chicago, Ill, for defendants-appellees.

Before WOOD and CUDAHY, Circuit Judges and GRANT, Senior District Judge.*

CUDAHY, Circuit Judge.

Two distinct issues, relating to separate claims are presented for resolution on this appeal. The first issue is whether the district court properly invoked the doctrine of primary jurisdiction to stay proceedings on a claim by the United States alleging non-compliance by Cook County, Illinois corrections officials with conditions of grants from the Law Enforcement Assistance Administration (LEAA), pending completion of administrative proceedings by LEAA pursuant to 42 U.S.C. § 3757.[1] The second issue is whether the United States has standing to bring an action to vindicate the Eighth and Fourteenth Amendment rights of inmates at the Cook County Department of Corrections (the "inmates"). We hold that the district court's invocation of the doctrine of primary jurisdiction with respect to the government's contractual claim was in error and we remand the question of the government's standing to litigate the inmates' Eighth and Fourteenth Amendment rights to the district court in light of the recently enacted "Civil Rights of Institutionalized Persons Act", Pub.L. No. 96–247 (1980).

I.

There has been no trial on the merits or other evidentiary hearing in this case, and the basic facts relevant to this appeal are essentially undisputed. The underlying subject of the lawsuit is the Cook County Department of Corrections, a detention facility owned and operated by Cook County, Illinois, principally for the housing of persons awaiting trial in the criminal courts of Cook County. The Department of Corrections has the capacity to hold more than 5,000 persons at a time, and approximately 60,000 persons are incarcerated there each year. Over the years, the Department has applied for and received federal funds from LEAA, pursuant to 42 U.S.C. § 3701 et seq. Those funds have been used for the construction of correctional facilities and the implementation of correctional programs.

The United States' original complaint in this action, filed December 29, 1978, alleged that conditions at the Department of Corrections, including overcrowding, inadequate sanitation and inadequate visitation opportunities, constituted systemic violations of the Eighth and Fourteenth Amendment rights of individuals incarcerated there. Named as defendants in the complaint were the sheriff of Cook County, the Executive Director of the Cook County Department of Corrections, the President and members of the Cook County Board of Commissioners, the Director of the Illinois Department of Corrections and the State of Illinois.[2] The defendants were alleged to exercise various responsibilities over the operation and administration of Cook County's correctional facilities.

The defendants subsequently moved to dismiss the complaint on the ground, inter alia, that, in the absence of express statutory authority, the United States lacked standing to bring an action to vindicate the Eighth and Fourteenth Amendment rights of third persons. The district court expressed an initial view that the United States was without authority to bring this

---

* The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

1. The statute governing LEAA's operations, 42 U.S.C. § 3701 et seq., was revised in various respects by the "Justice System Improvement Act of 1979," Pub.L.No. 96–157 (1979) (the "Justice Improvement Act"). Sec. 1301(e) of the Justice Improvement Act (42 U.S.C. § 3797(e)) provides that "[t]he amendments made by the [Justice Improvement Act] shall

not affect any suit, action, or other proceeding commenced by or against the Government before the date of the enactment of such Act." The instant action, commenced prior to enactment of the Justice Improvement Act, is thus unaffected by it. All citations to 42 U.S.C. § 3701 et seq. accordingly refer to the Code as it existed at the time this action was filed.

2. The State of Illinois and the Director of the Illinois Department of Corrections were later dismissed as defendants.

type of suit, but held its final ruling on the motion to dismiss in abeyance pending appeal to the Fourth Circuit of *United States v. Solomon*, 419 F.Supp. 358 (D.Md.1976), another case involving the United States' standing to bring civil rights actions. The district court also gave the United States leave to amend its complaint in order to plead facts sufficient to state a claim upon which relief could be granted.

On October 12, 1977, the Fourth Circuit ruled that the United States was without standing to bring a Fourteenth Amendment action on behalf of patients in state mental hospitals. *United States v. Solomon*, 563 F.2d 1121 (4th Cir. 1977). Soon thereafter, on November 10, 1977, the government filed an amended complaint in this action. The amended complaint contained the original and two new constitutional claims for relief,[3] and added claims for breach of the contractual conditions pursuant to which Cook County had received construction funds from LEAA, and claims alleging that inmates were being housed on the basis of race in violation of 42 U.S.C. § 3766. The defendants again moved for dismissal on various grounds. By order of January 26, 1979, the district court, relying primarily on the Fourth Circuit's decision in *Solomon*, dismissed the constitutional claims asserted by the United States. It reaffirmed its earlier view that, in the absence of specific statutory authority, the United States lacked standing to sue to redress alleged deprivations of Eighth and Fourteenth Amendment rights of third persons. The district court also decided to stay proceedings on the government's contractual claims, ordering that those claims initially be adjudicated in administrative proceedings, which the government was directed to bring before LEAA pursuant to 42 U.S.C. § 3757. As to the allegations of racial discrimination, the court ruled that the United States had successfully stated a cause of action. Finding no just reason for delay, the court stated that its order, insofar as it disposed of the contractual and constitutional claims, would constitute a final judgment under Fed.R.Civ.P. 54(b).

The United States then appealed the district court's stay of its contractual claim and dismissal of its constitutional claim to this court. We address those actions in turn.

## II.

### A. Appealability

· We address as a threshold issue the question whether the primary jurisdiction stay entered as to the government's contractual claim is a final order vesting this court with appellate jurisdiction. 28 U.S.C. § 1291. It is well established in this circuit that abstention stays, issued in contemplation of the initiation of proceedings in the state courts, are appealable orders. *Miller-Davis Co. v. Illinois State Toll Highway Authority*, 567 F.2d 323, 325 (7th Cir. 1977); *Vickers v. Trainor*, 546 F.2d 739, 741 (7th Cir. 1976); *Drexler v. Southwest Dubois School Corporation*, 504 F.2d 836, 838 (7th Cir. 1974) (en banc); *but see Calvert Fire Insurance Co. v. Honorable Hubert L. Will*, 560 F.2d 792 (7th Cir. 1977), *rev'd*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978). Defendants contend, however, that an abstention stay, or at least the one issued in *Drexler, supra*, is of a different genre than the sort of "primary jurisdiction" stay issued in this case, because the *Drexler* stay involved "hotly contested" legal issues not implicated here. But we fail to see how the warmth of the legal disagreement in *Drexler* in any way vitiates that case's precedential value. Moreover, defendants have not suggested that the mercury was rising uncontrollably in *Miller-Davis* or *Vickers*, cited above, in which this court also held abstention stays to be appealable orders.

■ The stay issued below, expressly denominated a final judgment by the district court pursuant to Fed.R.Civ.P. 54(b), has put the government "effectively out of court". *Idlewild Bon Voyage Liquor Corporation v. Epstein*, 370 U.S. 713, 715 n. 2, 82

---

3. The additional constitutional violations charged related to the inadequacy of inmates'

medical care and failure to segregate violent inmates from the jail population at large.

S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962). We thus consider it to be an appealable order. *Drexler v. Southwest Dubois School Corporation, supra.*

### B. Primary Jurisdiction

■ The doctrine of primary jurisdiction, invoked *sua sponte* by the court below to stay the government's contractual claim, "determines whether the federal court will refrain from exercising its unquestioned jurisdiction over a dispute until after an administrative agency has resolved some question arising in the proceeding before the court. It represents a recognition of the need for an orderly coordination between the functions of court and agency in securing the objectives of their often overlapping competency." *Interstate Commerce Commission v. All-American, Inc.,* 505 F.2d 1360, 1362 (7th Cir. 1974). The doctrine, first enunciated by the Supreme Court in *Texas & Pacific Railway v. Abilene Cotton Oil Co.,* 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), was refined and developed in later decisions. "[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). Similarly, the Supreme Court remarked in *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 64–65, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956), that "[p]rimary jurisdiction . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body . . . ."

In determining the doctrine's applicability to a particular dispute, "the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application." *Ibid.* We are unpersuaded that those purposes will be furthered by invocation of the doctrine here. The principal reason that referral of the government's contractual claim to LEAA would be inefficacious is that the agency is itself a plaintiff in the instant case by virtue of its statutorily subordinate status to the United States Attorney General, who instituted the action. *See* 42 U.S.C. § 3711(a). As this court previously observed in *Interstate Commerce Commission v. All-American, Inc.,* 7th Cir., 505 F.2d 1360, 1362–63:

> Ordinarily, the doctrine of primary jurisdiction attaches in instances where the case is taken into the courts without any direct involvement of the administrative agency. It has been suggested by one commentator that, in cases where the appropriate administrative body is before the court, the doctrine should not apply since a principal function of the rule, acquainting the court with the agency's position concerning the matter, has been satisfied. Davis, Administrative Law Treatise, Volume 3, § 19.02, p. 14, note 41 (1951). "Therefore, the doctrine does not apply when the agency itself is plaintiff." *C.A.B. v. Aeromatic Travel Corp.,* 489 F.2d 251 (2d Cir. 1974).

Defendants contend that our holding in *I. C. C. v. All-American, supra,* is in some way inapposite because, unlike the Interstate Commerce Commission, LEAA is a "fund-dispensing" agency rather than a "regulatory" agency. But distinctions between a mission of largesse and the pursuit of regulation miss the point; the important fact is that the agency is a plaintiff in this action, and "is perfectly content to let the district court dispose of the case with the benefit of [its] views." *United States Tour Operators Association v. Trans World Airlines, Inc.,* 556 F.2d 126, 130 (2d Cir. 1977). Requiring referral of the contractual issue to LEAA is thus to indulge a needlessly delaying formalism. *C.A.B. v. Aeromatic Travel Corporation,* 489 F.2d 251, 254 (2d Cir. 1974).

Defendants also argue that the instant case is distinguishable from *All-American* and *Aeromatic Travel* because each of the agencies involved in those cases possessed

specific statutory authority to sue for the relief sought, whereas LEAA (and the United States) lack similar statutory authority here. But it is not disputed that the United States has the right to bring an action on contract without benefit of statute,[4] and defendants do not explain why applicability of the primary jurisdiction doctrine should in any way turn on the source of governmental authority to litigate the underlying claim.

Aside from LEAA's status as a plaintiff, there are a number of additional reasons why the doctrine of primary jurisdiction is inapplicable here. First, this claim involves, in the words of the district court, "compliance with various administrative standards and regulations," rather than their reasonableness. As we observed in *I. C. C. v. All-American, supra* :

> "[The] doctrine is not applicable where the issue, regardless of its complexity, is not the reasonableness of the rate or rule, but a violation of such rate or rule. Thus it has been continuously asserted that courts have original jurisdiction to interpret tariffs, rules, and practices where the issue is one of violation, rather than reasonableness." *Civil Aeronautics Board v. Modern Air Transport, Inc.,* [179 F.2d 622, 624 (2d Cir. 1950)].

505 F.2d at 1363. *See also United States Tour Operators Association v. Trans World Airlines, Inc., supra,* at 130. Resolution of the contractual issues in this case does not implicate difficult technical questions beyond the judiciary's traditional competence, *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 305, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976), and, again, LEAA is present before the court to lend whatever accumulated special expertise it may possess.

There is also some doubt about LEAA's authority to conduct the administrative proceedings contemplated by the district court. 42 U.S.C. § 3757 authorizes LEAA to withhold future payments from "applicants" or "grantees" for noncompliance with contractual and other requirements. The defendants apparently have no pending applications for, and are not presently receiving, any LEAA funds. Their status as either grantees or applicants under 42 U.S.C. § 3757 is thus unclear, and the statute does not make reference to the holding of administrative proceedings to determine compliance with conditions of contracts which have already been completed. Where no administrative remedy exists, the doctrine of primary jurisdiction does not apply. *Lloyd v. Regional Transportation Authority,* 548 F.2d 1277, 1287 (7th Cir. 1977). Uncertainty as to the scope of LEAA's administrative authority thus militates against initial resort to the agency here.

█ The stay issued below postpones proceedings in the district court while the Attorney General retires to another forum to proceed before his own subordinate. Indeed, LEAA in this case has been effectively required to proceed before itself. Such a proceeding strikes us as unnecessary, unnecessarily expensive, and likely to have a pre-ordained outcome. "[W]hen the agency chooses to go to the district court for enforcement, it makes little sense to refer the very question at issue to the agency." *C.A.B. v. Aeromatic Travel Corporation,* 489 F.2d 251, 254 (2d Cir. 1974); *I.C.C. v. B & T Transportation Co.,* 613 F.2d 1182, 1187 (1st Cir. 1980). The district court's invocation of the doctrine of primary jurisdiction was accordingly in error.[5]

---

4. *Dugan v. United States,* 16 U.S. (3 Wheat.) 172, 4 L.Ed. 362 (1818); *United States v. Tingey,* 30 U.S. (5 Pet.) 115, 8 L.Ed. 66; *Jessup v. United States,* 106 U.S. 147, 1 S.Ct. 74, 27 L.Ed. 85 (1882).

5. Nothing we said in *Bradford School Bus Transit, Inc. v. Chicago Transit Authority,* 537 F.2d 943 (7th Cir. 1976), is inconsistent with our holding here. *Bradford* involved a suit by private school bus operators alleging that the Chicago Transit Authority (the "CTA") was

impermissibly engaged in school bus operations in violation of its grant contract with the federal Urban Mass Transportation Assistance Administration ("UMTA"). In *Bradford,* we invoked the doctrine of primary jurisdiction to require the operators, who were in effect interested third parties to the contract, to initially proceed before UMTA. Thus, the primary jurisdiction doctrine was applied not against the agency, but against interested third parties. By

### III.

At the time the district court ruled that the government was without standing to prosecute its claims in vindication of the inmates' constitutional rights, express statutory authority for the United States to pursue such claims was lacking. While this case was pending on appeal, however, the President signed into law the "Civil Rights of Institutionalized Persons Act," Pub.L. No. 96–247 (1980) (the "Act"). The Act provides, *inter alia*:

SEC. 3 INITIATION OF ACTIONS

(a) Whenever the Attorney General has reasonable cause to believe that any State or political subdivision of a State, official, employee, or agent thereof . . is subjecting persons residing in or confined to an institution[6] . . . to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution . . . of the United States causing such persons to suffer grievous harm, and that such deprivation is pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges, or immunities, the Attorney General, for or in the name of the United States, may institute a civil action in any appropriate United States district court against such party for such equitable relief as may be appropriate to insure the minimum corrective measures necessary to insure the full enjoyment of such rights, privileges or immunities . . . . .

Thus, explicit statutory authority for the Attorney General to bring actions such as the one brought here now exists.

 Resolution of the standing question is accordingly governed by the new Act. "It is well established that when a lower court relied on a legal principle which is changed by a treaty, statute, or decision prior to direct review, an appellate court must apply the current law rather than the law as it existed at the time the lower court acted." *United States v. Fitzgerald*, 545 F.2d 578, 581 (7th Cir. 1976). Unless application of a new law will result in "manifest injustice," "a court is to apply the law in effect at the time it renders its decision." *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *Cort v. Ash*, 422 U.S. 66, 67, 95 S.Ct. 2080, 2082, 45 L.Ed.2d 26 (1975). No injustice will result from application of the new law here.

The Attorney General's authority to proceed under the Act is conditioned upon compliance with certain certification requirements detailed in Section 4. At the time an action is commenced, he must certify to the court, *inter alia*, that at least 49 calendar days previously he has notified specified state officials of the institutional conditions which allegedly violate the Constitution, of the supporting facts giving rise to the alleged conditions and of the minimum measures which he believes may remedy them. The Attorney General must also certify that he has made reasonable good faith efforts to consult with responsible state officials and that efforts at voluntary correction of the unconstitutional conditions have not succeeded. Obviously, the required certifications have not been made here; the Act had not been passed at the time this lawsuit was commenced. We thus believe the most prudent course of action is to remand the case to the district court to accord the Attorney General an opportunity to comply with the statutory requirements.

The judgment of the district court on both the contractual and constitutional

---

contrast, the administrative agency is the plaintiff here, and the district court's order requires it to proceed before itself. As we indicated above, when the agency itself chooses to go to the district court for enforcement, little is gained by tossing the very question in dispute back in the agency's lap.

We note also that the agency in *Bradford* had "recently established complaint procedures and remedies available to interested parties," *Bradford, supra* at 948, whereas LEAA's authority to conduct proceedings here, as discussed above, is uncertain.

6. "Institution" is defined in Sec. 2. of the Act to include, *inter alia*, "a jail, prison, or other correctional facility."

claims is reversed, and the case is remanded for proceedings consistent with this opinion.