Flora SANTANA et al., Plaintiffs,

·United States of America,
Plaintiff-Intervenor,

v.

Jenaro COLLAZO et al., Defendants.

Civ. Nos. 75–1187, 75–1213 and 75–1466.

United States District Court,
J. D. Puerto Rico.

Jan. 27, 1981.

---

Ms. María Laura Colón, H. Quiñones Eschevarría, Hato Rey, P. R., Harry F. Swanger, National Juvenile Law Center, St. Louis, Mo., for plaintiffs.

Robert Dinerstein, Yolanda Roger, Mary McClymont, Yolanda Orozco, Civil Rights Division, U. S. Dept. of Justice, Washington, D. C., for plaintiff-intervenor.

Daniel F. Lopez Romo, U. S. Atty., San Juan, P. R., Ramírez & Rivera, U. S. Atty., Hato Rey, P. R., Miguel Giménez Muñoz, Secretary of Justice, San Juan, P. R., for defendants.

## DECISION AND ORDER

TORRUELLA, District Judge.

This matter is presently before us on Defendants' Opposition to the Motion of Plaintiff-Intervenor United States of America to intervene and the reply of the United States thereto.

Inasmuch as this Court had previously issued a lengthy Decision and Order on this subject, our review of the relevant facts will be brief.

This action began when Plaintiffs filed suit pursuant to 42 U.S.C. § 1983, alleging that juveniles confined in the Mayaguez Industrial School in Mayaguez, Puerto Rico and the Maricao Juvenile Camp in Maricao, Puerto Rico were being denied their constitutional rights.

Almost a year later, the United States moved to intervene and this Motion was granted. Its complaint alleged that Defendants' acts and omissions were violative of the confined juveniles' rights under the Fourth, Fifth, Eighth, Ninth, Thirteenth and Fourteenth Amendments of the Constitution. Plaintiff-Intervenor prayed for a declaratory judgment and injunction against Defendants for failing or refusing to provide appropriate care and treatment in the least restrictive setting to all juveniles in their control or custody.

Subsequently, Defendants raised the issue of lack of standing of Plaintiff-Intervenor and the Court concluded that Plaintiff-Intervenor lacked standing to intervene in this suit. This determination was made on the basis of *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) where the Supreme Court held that:

"Even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties."

Furthermore, under the Constitution's Article III requirements, not only must there be "a distinct and palpable injury" to Plaintiff personally, even if it is an injury shared by a large class of other possible litigants, *Warth v. Seldin*, supra, but there must also be a "fairly traceable casual connection between the claimed injury and the challenged conduct." *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 98 S.Ct. 426, 54 L.Ed.2d 297 (1978).

The Court held, therefore, that Plaintiff-Intervenor had not demonstrated the requisite "injury in fact" nor a connection between the claimed injury and the conduct of Defendants.

Then, on May 23, 1980, Congress passed the "Civil Rights of Institutionalized Persons Act" (the "Act"), Public Law 96–247, 94 Stat. 351. Section 5 of this "Act" provides:

"(a)(1) Whenever an action has been commenced in any court of the United States seeking relief from egregious or flagrant conditions which deprive persons residing in institutions of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States causing them to suffer grievous harm and the Attorney General has reasonable cause to believe that such deprivation is pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges, or immunities, *the Attorney General, for or in the name of the United States, may inter-vene in such action upon motion by the Attorney General.* (Emphasis ours).

(2) The Attorney General shall not file a motion to intervene under paragraph (1) before 90 days after the commencement of the action, except that if the court determines it would be in the interests of justice, the court may shorten or waive the time period.

(b)(1) The Attorney General shall certify to the court in the motion to intervene filed under subsection (a)–

(A) that he has notified in writing, at least fifteen days previously, the Governor or chief executive officer, attorney general or chief legal officer of the appropriate State or political subdivision, and the director of the institution of—

(i) the alleged conditions which deprive rights, privileges, or immunities secured or protected by the Constitution or laws of the United States and the alleged pattern or practice of resistance to the full enjoyment of such rights, privileges, or immunities;

(ii) the supporting facts giving rise to the alleged conditions, including the dates and time period during which the alleged conditions and pattern or practice of resistance occurred; and

(iii) to the extent feasible and consistent with the interests of other plaintiffs, the minimum measures which he believes may remedy the alleged conditions and the alleged pattern or practice of resistance; and

(B) that he believes that such intervention by the United States is of general public importance and will materially further the vindication of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

(2) Any certification made by the Attorney General pursuant to this subsection shall be personally signed by him.

(c) Any motion to intervene made by the Attorney General pursuant to this section shall be personally signed by him.

(d) In any action in which the United States joins as an intervenor under this section, the court may allow the prevail-

ing party other than the United States, a reasonable attorney's fee against the United States as part of the costs. Nothing in this subsection precludes the award of attorney's fees available under any other provisions of the United States Code."

Defendants maintain that irregardless of Section 5 of the Act which authorizes the Attorney General's intervention in cases of the type at bar, this case is the same as it was before passage of the Act and that the United States has failed to meet the Article III case or controversy test as interpreted by the Supreme Court in *Duke Power Co.·v. Carolina Env. Study Group,* supra; *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) and *Warth v. Seldin,* supra. Defendants also argue that Section 5 of the Act is unconstitutional.

To support their contentions, Defendants cite *United States v. Mattson,* 600 F.2d 1295 (C.A. 9, 1979) and *United States v. Solomon,* 563 F.2d 1121 (C.A. 4, 1977). In these cases, the Courts of Appeals held that the Attorney General may not sue to vindicate the constitutional rights of institutionalized mentally retarded citizens. However, in both of these cases, express statutory authority was lacking.

In a more recent case, *U. S. v. Elrod,* 627 F.2d 813 (C.A. 7, 1980), the District Court had ruled that the Attorney General had no standing to prosecute the Government's claims in vindication of the inmates' constitutional rights without express statutory authority. While the case was pending on appeal, the "Civil Rights of Institutionalized Persons Act" was passed providing explicit statutory authority to the Attorney General to initiate suits and to intervene in this type of litigation. The Court of Appeals reversed and remanded the case to accord the Attorney General an opportunity to comply with the statutory requirements of Section 5 of the Act. This procedure was followed in our Decision and Order of September 5, 1980, where the Attorney General was granted thirty days to comply with Section 5 requirements, which he then proceeded to do. See *U. S. v. City of Philadelphia,* 644 F.2d 187 (C.A. 3, 1980).

A review of the legislative history of the Act clearly shows that the impact of the *Solomon* and *Mattson* decisions moved Congress to pass this Act[1] granting statutory authority to the Attorney General to initiate or intervene in litigation to secure citizens' basic constitutional rights where evidence has tended to show a widespread denial of such rights. *U. S. v. City of Philadelphia,* supra.

Support for this grant of authority can be found in *Singleton v. Wulff,* 428 U.S. 106, 115–116, 96 S.Ct. 2868, 2874–2875, 49 L.Ed.2d 826 (1976) and in other Civil Rights statutes and supporting case law.

Turning first to *Singleton v. Wulff,* supra, the Court held that one exception to the general rule of standing to be used to determine when a litigant may properly claim relief on the basis of third party rights is whether there is some genuine obstacle making it impossible or difficult for third parties to assert their own rights. See *Friedman v. Harold,* 638 F.2d 262 (C.A. 1, 1981).

It is evident from the legislative history that the raison d'etre of the Act is to protect the rights of institutionalized persons because they themselves are unable or incapable of doing so.[2]

Second, and in light of Defendants' constitutional attack on Section 5, a review of other Civil Rights Statute is necessary. This review shows that a similar grant of authority has been given to the Attorney General and upheld by the Supreme Court under Title I of the Civil Rights Act of 1964, 42 U.S.C. § 1971(e), (voting discrimination). See *Briscoe v. Bell,* 432 U.S. 404,

1. See S.Rep.No.416, 96th Cong., (November 15, 1979), reprinted in U.S.Code Cong. & Ad.News 1936, 1947–1948 (1980).

2. For a detailed discussion of the inability of institutionalized persons to assert their own rights, see the Senate Report, # 96–416 (November 15, 1979) reported in U.S.Code Cong. & Adm.News (1980) at pp. 1950–1955.

97 S.Ct. 2428, 53 L.Ed.2d 439 (1977); *U. S. v. Mississippi*, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965); *Louisiana v. U. S.*, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965), all holding that Congress could authorize the United States to institute legal proceedings against States to protect constitutional rights of citizens. Similar grants are given to the Attorney General under Title II, 42 U.S.C. § 2000a–5(a) public accommodations. See *Heart of Atlanta Motel Inc. v. U. S.*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964); under Title VII, 42 U.S.C. § 2000e–5(a) (employment discrimination), see *U. S. v. Ironworkers Local 86*, 443 F.2d 544 (C.A. 9, 1971), cert. den. 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (191), and under Title VIII, of the Civil Rights Act of 1968, 42 U.S.C. § 3613 (housing), see *U. S. v. Bob Lawrence Realty, Inc.*, 474 F.2d 115 (C.A. 5, 1973), cert. den. 414 U.S. 826, 94 S.Ct. 131, 38 L.Ed.2d 59 (1973); *U. S. v. Hunter*, 459 F.2d 205 (C.A. 4, 1972), cert. den. 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972).[3]

These statutes are based primarily on the power of Congress to enforce the Fourteenth Amendment and its analogous power under the Fifteenth Amendment.

As the Supreme Court held in *Katzenback v. Morgan*, 384 U.S. 641, 651, 86 S.Ct. 1717, 1723, 16 L.Ed.2d 828 (1966):

"Correctly viewed, Section 5 (of the Fourteenth Amendment) is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment."

In summary, the Court must agree with Plaintiff-Intervenor that there appears to be ample authority under the Fourteenth Amendment for Congress to have enacted this Act and we find it to pass constitutional scrutiny.

Furthermore, Congressional intent is clear that

"The Attorney General's authority to litigate is limited to situations in which he has reasonable cause to suspect a 'pattern or practice' of institutional abuse in violation of the constitution or Federal laws. This 'pattern or practice' authority has been interpreted by the courts in other contexts, and the committee intends the language here to be construed in conformity with established precedent. Thus, the Attorney General does not have authority under this bill to redress isolated instances of abuse or repeated violations against an individual. Rather, the Attorney General's authority is limited to cases where unconstitutional or illegal practices are widespread, pervasive, and systematic, and adversely affect significant numbers of institutionalized individuals. It is clearly the intent of the committee that minor or isolated acts or injuries are not intended to be the subject of litigation under this bill. The bill authorizes action only where persons residing in an institution are subjected to 'egregious or flagrant conditions (conditions which are willful or wanton or conditions of gross neglect) ... causing them to suffer grievous harm.' These descriptive terms are intended to parallel the limitations that have been applied to actions brought under 42 U.S.C. 1983 and similar rights enforcement statutes."

Senate Report # 96–416 (November 15, 1979) as reported in U.S.Code Cong. & Ad. News (1980) at 1960.

This hardly grants the Attorney General or the United States the "blanket power" alleged by Defendants to initiate and to intervene in pending litigation.

Therefore, while we have no doubts as to the correctness of our earlier decision denying Plaintiff-Intervenor the right to intervene, the passage of the "Civil Rights for Institutionalized Persons Act" together with the Attorney General's compliance with the procedural and certification requirements of Section 5 of the Act compels us to reconsider and thus to GRANT United States' Motion to intervene as Plaintiff in this action.

---

**3.** Also see *U. S. v. City of Philadelphia*, supra; S.Rep.No.416, 96th Cong., (November 15, 1979), U.S.Code Cong. & Ad.News 1936, 1953 (1980).

Parties are hereby advised that trial will be set for the 14th of April, 1981, at 9:00 A.M. Should any of the parties wish to appeal this Order, such appeal shall be certified by this Court 'pursuant to 28 U.S.C. § 1292(b); however, no stay of this Court's proceedings shall be granted.

IT IS SO ORDERED.