ROHR INDUSTRIES, INC., Appellant

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY.

No. 82–2180.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 27, 1983.

Decided Nov. 1, 1983.

As Amended Nov. 30, 1983.

David V. Anthony, Paul C. Fuener, Washington, D.C., for appellant.

Robert L. Polk, with whom Richard W. Beebe, Washington, D.C., was on the brief, for appellee.

Before TAMM and WILKEY, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

MacKINNON, Senior Circuit Judge:

The complaint in this case seeks damages from the purchaser of the subway cars for the Metropolitan Area subway system for its alleged intentional delay and failure to provide an adequate administrative remedy to adjudicate some 42 claims (originally consolidated in a single claim of 55 subparts) for equitable adjustment involving $48,283,643 in alleged increased costs caused by changes in design, specifications, time or rate of delivery and increase in the amount of services to be furnished. Basically the claim rests on the allegation that the contractual agreements to provide a procedure for adjudicating "disputes" was not adequately complied with. The District Court

dismissed the complaint without prejudice for failure to exhaust administrative remedies. Appellants only seek review of the dismissal of Count II. We hold that appellant's case as set forth in Count II is not subject to the "disputes" clause and that it should be permitted to proceed with its case in district court at this time. We accordingly reverse. The basis of our jurisdiction is set forth in the margin.[1]

## I.

Appellant Rohr Industries, Inc. ("Rohr") entered into a contract with the Washington Metropolitan Area Transit Authority ("WMATA") in 1972. Rohr agreed to supply 300 rapid transit rail cars to WMATA for a total price of $91 million dollars. The contract anticipated that adjustments to the specifics of the cars' design and to their delivery schedule would be required as the work progressed. The parties thus agreed to a "Changes" provision.[2]

The parties also correctly anticipated that there would be some disagreements on which a mutually satisfactory adjustment could not be reached. Provision No. 11 of the contract set up a Disputes process for resolution of these arguments.[3]

This process provides for a three-step dispute resolution: First, Rohr is to present its claim to the Contracting Officer who makes an initial decision. Second, if Rohr is dissatisfied with his decision, it can appeal to the Board of Contract Appeals of the Army Corps of Engineers ("Board"). A hearing is held, and the decision is forwarded to WMATA's Board of Directors or General Manager as a recommendation. The third step is for the Board or the General Manager of WMATA to complete the process by

---

1. Jurisdiction for this action is founded upon 28 U.S.C. § 1332 and upon P.L. No. 89–774, § 81 which provides:

    The United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland and Virginia, of all actions brought by or against the Authority and to enforce subpoenas issued under this Title. Any such action initiated in a State Court shall be removable to the appropriate United States District Court in the manner provided by Act of June 25, 1948, as amended (28 U.S.C. 1446).

    The amount in controversy exceeds the sum of ten thousand dollars ($10,000) exclusive of interest and costs.

2. Provision No. 2 of the Contract provides re "Changes":

    The Contracting Officer may at any time . . . make changes within the general scope of this contract, in any one or more of the following: (1) Drawings, designs, or specifications where the supplies to be furnished are to be specifically manufactured for the Authority in accordance therewith . . . (6) Time or rate of delivery; (7) Increases or decreases in the amount of services or articles to be furnished hereunder. If any such change causes an increase . . . in the cost of, or the time required for performance of any part of the work under this contract, whether changed or not changed by any such order, *an equitable adjustment shall be made in the contract price or delivery schedule, or both, and the contract shall be modified in writing accordingly.*

(App. 5) (Emphasis added).

3. With respect to "Disputes" the contract provides:

    (a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within thirty (30) days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Board of Directors of the Washington Metropolitan Area Transit Authority. . . .

    (b) This Disputes Article does not preclude consideration of questions of law in connection with decisions provided for in paragraph (a) above. Nothing in this contract, however, shall be construed as making final decisions of the Board of Directors or its representative on a question of law.

    (c) If an appeal is taken from the decision by the Contracting Officer, a hearing will be held before the Corps of Engineers, Department of the Army, Board of Contract Appeals and a written opinion will be provided to the Board of Directors by the Board of Contract Appeals. For the purposes hereof, such opinion will be considered a recommendation for the action to be taken by the Board of Directors, or the General Manager, its authorized representative. . . .

(WMATA Brief, 5).

rendering a final administrative decision on the claim.

This three-tiered process has not been a model of expedition or administrative efficiency. Rohr first invoked the disputes apparatus in 1977 when it filed a consolidated claim, consisting of over 50 subparts, with its Contracting Officer. It took well over four years for the Officer to complete the first step in the decisional process. He denied the great portion of Rohr's consolidated claim—Rohr states that 98% of the claim was denied—and Rohr assessed the functioning of the disputes mechanism, and on the basis of the past experience, calculated that completion of all three steps would not occur until sometime in the 1990s. Considering such extensive delay to be unjustified, Rohr sued WMATA in the District Court to both leapfrog the process as to a single specific claim (Count I of its complaint) and to claim a breach of the Disputes provision (Count II) by WMATA. Only Count II is before the court on this appeal.

Rohr's original complaint alleged in Count II that:

65. The delays in obtaining the administrative resolution of Rohr's claims before the Contracting Officer and before the ENG Board [the Board] are clearly caused by the following:

a.) An implemented intent by WMATA ... to delay all proceedings at every level as long as possible in order to retain use of the money otherwise due Rohr and when payment is made to pay in deflated dollars;

b.) A failure by WMATA to assign sufficient staff to review the claims;

c.) A failure of WMATA to assign sufficient attorneys and/or support personnel to process the cases to litigation; and

d.) An overcrowded docket before the ... Board.

66. WMATA's failure and/or delay in providing an administrative remedy has been intentional and of such duration as to render that remedy inadequate and

has thereby breached the terms of the Contract's "Disputes" clause.

(App. 20–21.)

WMATA moved in the District Court for a dismissal, arguing as to Count II that it was a "garden variety request by Rohr for attorneys' fees associated with litigating its various claims disguised by innovative and fanciful pleading." (App. at 30.) The District Court focused most of its attention on Count I, ruling that it was an attempt to avoid the agreed-upon disputes process which would be dismissed on exhaustion grounds. (App. 387.) The Court also dismissed Count II, stating only that "[t]he claim for breach of the disputes clause can be more efficiently and accurately resolved after the administrative apparatus has at least found facts relating to plaintiff's claim for prejudgment interest or its equivalent in damages." *Id.* The court's reference to prejudgment interest relates to part of Rohr's consolidated claim originally filed with the Contracting Officer which sought an award of interest on the monies it hoped to eventually gain from WMATA for changes under the contract. The lower court apparently felt that while Count II was not itself a claim that should have been brought into the disputes process, it nevertheless could be more easily handled once the disputes process had run its course, at least as to the question of interest. Perhaps the court anticipated helpful findings from the Board on issues related to the charge of unjustified delay. It did not, however, hold that Count II was subject to the exhaustion requirement. Rohr contends that the dismissal of Count II is beyond the District Court's authority. We agree.

## II.

The disputes clause is a standard feature of government contracts, and arguments concerning their scope and appropriate function are not novel. *See United States v. Utah Construction Company,* 384 U.S. 394, 402–403, 86 S.Ct. 1545, 1550, 16 L.Ed.2d 642 (1965). This court has noted:

[I]t is now settled that the fact-disputes clause extends only to controversies redressable by specific provisions in the contract. Stated differently, a fact-dispute is one "arising under this contract" only when the disputed fact is capable of complete resolution by a procedure specified in the contract. In consequence, claims which are adjustable under contractual provisions must be submitted for the administrative determinations prescribed by the contract, while *claims for breach of contract—those not adjustable in that fashion—may be litigated in a court of competent jurisdiction without previous resort to that procedure.*

*Bethlehem Steel Corp. v. Grace Line, Inc.,* 416 F.2d 1096, 1101 (D.C.Cir.1969) (emphasis added).

The claim by Rohr in Count II that WMATA breached the contract with respect to implementing the Disputes clause is clearly beyond the scope of the Disputes clause in the contract. It is a challenge to that process as established and conducted by WMATA. It depends not at all on any of the contract's particulars. It is completely remote from the controversies surrounding the construction of the cars. Had Rohr alleged that WMATA had refused to do anything regarding the processing of claims the validity of the theory of Rohr's complaint would have been obvious. As Rohr has alleged, however, that WMATA has covered its breach with a thin veneer of activity, the distance between Count II and the disputes procedure is more obscure but no less real. Neither the Contracting Officer, nor the Board, nor WMATA's directors or General Manager are in a position to review Count II's allegations. Nor would any of them be in a position to order the damages Rohr seeks even if any of them were convinced of the truth of Rohr's assertions. "When a court is called on to stay its hand pending administrative consideration and adjudication of a contractual dispute," this court wrote in *Bethlehem Steel,* "it is, in effect, being requested specifically to enforce a stipulation requiring the reference." *Bethlehem Steel,* 416 F.2d at 1105. Here there is no such stipulation. "And it

is clearly for the court to decide whether and as to what issues the parties have bound themselves to refer, unless their agreement is so broad as to commit even that question to administrative determination." *Id.* This court need not detail the precise boundaries of this disputes clause. We are confident that the alleged breach of that provision is beyond the borders of that clause.

In that Count II is beyond the jurisdiction of the Disputes procedures established by Provision 11, this case resembles the situation presented in *United States v. Medico Industries, Inc.,* 685 F.2d 230 (7th Cir.1982). There the court had before it the attempted repudiation by the government of an entire contract based upon an alleged violation of conflict-of-interest laws. The contractor urged that the question of such a violation had been improperly taken to a district court without prior resort to the administrative procedure allegedly provided for in the case. The district court agreed and dismissed the government's suit. The Seventh Circuit reversed, stating:

As a general rule, we would agree with the district court that the Board should be given an initial opportunity to decide whether it has jurisdiction in a case. In other words, it should have the opportunity to decide whether the dispute "arises under" the contract. But this principle is not applicable here.... The real issue is whether there exists any contract at all which can be equitably adjusted.... [T]hat issue clearly is not one which "arises under" the contract. Only in cases where the question determining jurisdiction can arguably be said to "arise under" the contract can the general principle be properly applied.

*Id.,* at 235.

Count II of Rohr's complaint cannot be said to be even "arguably" subject to the Disputes clause. Thus, it could not properly be dismissed on exhaustion grounds. Further, "[w]here no administrative remedy exists, the doctrine of primary jurisdiction does not apply." *United States v. Elrod,* 627 F.2d 813, 818 (7th Cir.1980) (citation omitted).

## III.

The cause also requires a determination of the scope of the District Court's jurisdiction over claims such as Count II which are not subject to the provisions of the Disputes clause. Rohr argues at length that the district court had no authority to dismiss this count. To support its position Rohr reaches back to the broad statements of Justice Marshall in *Cohens v. Virginia,* 19 U.S. 264 (6 Wheat.), 5 L.Ed. 257 (1821), statements which emphasized the duty of courts to hear cases properly brought before them.[4] That duty, of course, remains as viable today as it was 160 years ago. But exceptions have grown up, exceptions largely designed to protect a federal political system from a too ambitious federal judiciary. *See Colorado River Water Conservation District, et al. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1975).[5] Some exceptions have also addressed themselves to the discretion of federal courts confronting a case which is significantly related to another litigation proceeding in a second federal forum, whether it be another federal court or a federal agency.

The doctrines of exhaustion of administrative remedies and of primary jurisdiction will often control, but not always. A few cases exist where a court hesitates to allow a trial to go forward solely because of considerations of judicial efficiency. *See Chronicle Publishing Co. v. National Broadcasting Co.,* 294 F.2d 744 (9th Cir.1961); *Douglas v. Hampton,* 512 F.2d 976 (D.C.Cir. 1975). In such cases courts have deferred

---

4. Justice Marshall wrote:

> It is most true, that this court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction, if it should. The judiciary cannot, as the legislature may, avoid a measure, because it approaches the confines of the constitution. We cannot pass it by, because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur, which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty.

*Cohens, supra,* 19 U.S. at 403, 5 L.Ed. 257. Marshall's rejoinder remains the rule from which all exceptions have had to be carefully carved.

5. The Court reviewed a partial list of such exceptions, devoting most of its attention to the abstention doctrine, but noting also the

> principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183 [72 S.Ct. 219, 221, 96 L.Ed. 200] (1952).... Generally, as between state and federal courts, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction...." *McClellan v. Carland, supra,* [217 U.S. 268] at 282 [30 S.Ct. 501 at 505, 54 L.Ed. 762].... As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation.... This difference in general approach between state-federal and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.

*Colorado River Water Conservation District, supra,* 424 U.S. at 817, 96 S.Ct. at 1246 (citations omitted). The Court continued:

> In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum, ... the desirability of avoiding piecemeal litigation, ... and the order in which jurisdiction was obtained by the concurrent forums.... No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required.... Only the clearest of justifications will warrant dismissal.

*Id.* at 818, 96 S.Ct. at 1246 (citations omitted). The Court in *Colorado River* did not expressly consider the situation involving the concurrent jurisdiction of a federal court and an administrative process. *See generally Moses H. Cone Memorial Hospital v. Mercury Construction Corporation,* —— U.S. ——, 103 S.Ct. 927, 74 L.Ed.2d 765 (U.S.1983).

to agency proceedings even though there was no obligation to do so. Rather, these courts were alert to "situation[s] which cr[y] out for the elimination of duplication of effort. . . . ." *Chronicle Publishing Co.,* *supra,* 294 F.2d at 747.

■ Courts are certainly empowered to delay action where there is a likelihood that a related, though not identically overlapping, agency action may produce results that will render the complex fact pattern simple, or the lengthy proceeding short. *See City of Mishawaka, Indiana v. Indiana and Michigan Electric Co.,* 560 F.2d 1314, 1322 (7th Cir.1977), *cert. denied,* 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978). A model of the exercise of such discretion appropriately invoked is *Von Hoffburg v. Alexander,* 615 F.2d 633 (5th Cir.1980). In that case plaintiff was a woman who had been discharged from the Army because of homosexual tendencies. She sued the Army in District Court and sought, among other things, damages. The claim for damages was clearly beyond the jurisdiction of the military appeals process, but the district court dismissed the entire complaint. The Fifth Circuit reversed in part and ordered that the damages claim be reinstated but stayed pending resolution of other claims by the military. The court relied upon " '[p]ractical notions of judicial efficiency' " in allowing the postponement of proceedings before the district court pending the military's review of related claims. *Id.,* at 641 (citation omitted). Such notions clearly have a role to play when a court is confronted with a case the resolution of which could benefit from the prior conclusion of a related administrative proceeding.

But the prospect of enhanced efficiency is not the only consideration, and indeed is not the predominant consideration, in determining whether a district court should defer its own proceedings. The court in *Medico, supra* noted that "[d]ecisions regarding issues which are beyond [an agency's] power are null and void." *Medico, supra,* 685 F.2d at

236 (*citing Johnson Controls, Inc. v. United States,* 671 F.2d 1312, 1318 (Ct.Cl.1982)). The *Medico* court was aware that unjustified deference results in inapplicable findings and *de novo* proceedings in the trial court. A court, in reaching a decision of whether to delay its own proceedings either by stay or dismissal, must carefully consider the true value that would follow prior completion of the related agency proceedings. In this case there are no reasons to support such deference.

Rohr's complaint in Count II concerns alleged actions by WMATA during a definite period of time, from the filing of the consolidated claim in 1977 to the filing of the complaint in the District Court in April, 1982. In essence, Count II alleges that had the Disputes process been administered in good faith by WMATA, it would have resulted in X dollars in litigation-connected expenses. Rohr asserts that the "implemented intent" of WMATA to disrupt and delay the process has resulted in costs equaling X plus Y dollars, and that this additional cost of Y dollars is the proper measure of damages flowing from WMATA's breach.

Rohr also asserts that its "proof in support of Count II will not be complex." Supplemental Brief for Rohr at 13. Even if it is complex, it is difficult to foresee how such a claim will be significantly connected to the claims being processed through the dispute mechanism. WMATA has argued that "[i]n order to resolve the attorneys' fees claim under Count II of the Complaint, the District Court would necessarily have to hear and resolve the merits of all Rohr's claims".[6] WMATA Brief, 18. In its Supplemental Brief WMATA elaborates on this theme, arguing:

> Not only do Count II and the [Board] proceeding have common issues, thus imposing duplication of both administrative and judicial resources thereto, litigation of Count II would necessarily require the Court to hear and resolve the merits of

---

**6.** We do not accept WMATA's characterization of Count II as a claim for attorneys' fees. Rohr seeks the expenses that flowed from the alleged delay. One element of this total, indeed, perhaps the dominant element, will be Rohr's increased attorneys' fees. But Rohr seeks only that which it would not have had to spend but for WMATA's alleged recalcitrance. This is not a quest for the traditional award of "attorneys' fees".

all of Rohr's claims pending at the [Board].... [A]bsence of merit in the underlying claim, and/or the validity of defenses asserted by WMATA to the claims, together with the day-to-day conduct of the proceedings at the [Board], would all be subject matter for inquiry in resolving the obvious questions of whether there was delay, and, if so, by whom caused and the extent of the delay. Without weighing the merits of the claims, it would be well nigh impossible to determine whether the allegations of delay were not in fact frivolous. Since Rohr has charged that the [Board] also is responsible for unreasonable delay in the disputes process, the inquiry would accordingly involve detailed review and determination of the difficulty of the claims, including probing the administrative judges' mental processes in order to assess whether the time taken by the Board to render decisions constitutes "delay" or reasonable evaluation and resolution of the claims. To subject the ongoing administrative process to such intrusion based on the record which exists here accords with neither reason nor notions of efficiency.

Supplemental Brief for WMATA, 13–14. We do not find that these dire predictions are justified.

■ First, it is not necessary that the merits of Rohr's claims arising under the contract be resolved prior to a decision on the merits of Count II. It should be unquestioned that even claims on which Rohr eventually loses at the administrative level ought to be dealt with fairly and efficiently. WMATA appears to argue that it could be guilty of unjustified delay if and only if that delay occurred over a claim by Rohr which eventually resulted in an award to Rohr. This is simply wrong. Even Rohr's claims that are eventually judged by the administrative process to be without merit deserve the contracted-for consideration under the Disputes clause. The lower court will not be called upon to decide the merits of the underlying claims. It will instead be asked to determine whether WMATA acted with the appropriate and agreed-upon dispatch to address Rohr's complaints.

WMATA's concern for the integrity of the administrative process and its solicitous care for the privacy of the administrative judges are also misplaced. The district court possesses more than adequate power to protect both the machinery and its overseers from too intrusive an inspection. That court will not be asked to tackle uniquely difficult problems in this respect. Further, as was said in *United States v. Elrod,* 627 F.2d 813 (7th Cir.1980), "[r]esolution of the contractual issues in this case does not implicate difficult technical questions beyond the judiciary's traditional competence . . . ." *Id.,* at 818.

■ Other factors also prompt our decision to remand Count II for trial. This administrative process has to date been an excruciatingly slow one, even by contemporary standards. The lower court noted that "[m]any of plaintiff's criticisms of the inadequate resources committed by defendant to dispute resolution unfortunately resemble contemporary complaints regarding the judicial system." App. at 387. While this is undoubtedly true, it overlooks the fact that WMATA may have *contracted* to provide an administrative process considerably more efficient than the judicial system. When reaching a decision to defer, a court must consider how long an administrative process will run before its work is done. When the time necessary to completion is short, the case for deference is great. But when that process threatens to drag on—as this one does—for many years, then the rationale supporting deference is much weaker.[7] While that process struggles forward plaintiff's case grows stale. Witnesses vanish, memories dim, and the record grows more distant and difficult to retrieve with every day. Courts must be on guard to prevent "the ossification of rights which attends inordinate delay." *Hines v. D'Artois,* 531 F.2d at 726, 737 (5th Cir.1976).

While we do not accept as necessarily true appellant's estimate that the adminis-

7. The court cannot ignore the reality of the pace of litigation at the Board. Initially the

Board rejected Rohr's attempt to arrange a single proceeding on all the parts of the consol-

trative proceedings could last into the 1990's, we can note that more than six years have already passed since the consolidated claim was originally filed. "Whenever possible courts should avoid duplicated or *drawn-out* proceedings. The efficient administration of justice demands it." *Breen Air Freight v. Air Cargo, Inc.,* 470 F.2d 767, 774 (2d Cir.1972), *cert. denied,* 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973) (emphasis added). As Judge Devitt remarked in *U.S. v. Brennan,* 134 F.Supp. 42, 54 (D.C. Minn.1955): "Justice delayed is justice denied." Appellant's claim that this delay is wilful and WMATA's fault may or may not be true, but the opportunity to effectively prove obstructionism recedes quickly as time passes. Rote deference to agency proceedings in such circumstances can force parties to unnecessarily travel roads "equally long and expensive and available only to those with long purses . . ." *Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 309, 93 S.Ct. 573, 584, 34 L.Ed.2d 525 (1973) (Douglas, J., dissenting).

A district court must also examine whether delay of its own proceedings will have any impact on the alleged harm sought to be presented to the trial court. When the charge is obstructionism, courts must be wary of the possibility of rewarding the very impropriety alleged. In *Chronicle Publishing Co., supra,* the stayed proceeding was a private antitrust action. Delay by the trial court there had no effect of providing an incentive to defendant. Here, if WMATA has unjustifiably allowed its heels to drag, the proceedings in the trial court may well provide a spark that increases the effectiveness of the administrative machinery.

We express no opinion whatsoever on the merits of Count II. WMATA's conduct

may in fact eventually be revealed as exemplary. But the calculus of circumstances here presents a compelling case for moving quickly to trial on Count II. In other circumstances deference may be appropriate. Here it is not. Just the opposite is called for. Accordingly, the decision to dismiss Count II is reversed, and the case is remanded for trial.

*Judgment accordingly.*

---

idated claim rejected by the Contracting Officer and ordered that each subpart of that consolidated claim proceed individually. When Rohr's first brief was filed in this appeal, only three of these individual claims had been decided by the Board, and only 11 had been to trial. Brief for Rohr at 19. The Board ensured that additional delays would result when, following trial on the first six claims, it announced that proceedings before it would be bifurcated in the future. *Id.* First the Board would hear and decide argu-

ments on liability on each claim separately. If Rohr prevailed on the liability issue, then the claim would be recycled before the Board for determination on the amount of damages award. *Id.* There may be some rationale for this procedure, but it is not presented in the record. The wisdom of this course is not an issue before the court, but we cannot help but note that such a procedure guarantees that the snail's pace of this disputes process will not improve dramatically in the near future.