**EXCAVATION CONSTRUCTION, INC., Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.**

Civ. A. No. 83–1125.

United States District Court, District of Columbia.

June 21, 1984.

---

Tarrant H. Lomax, Rhodes, Dunbar & Lomax, Washington, D.C., for plaintiff Excavation Const., Inc.

Frank R. Filiatreau, Jr. and Robert L. Polk, Associates Gen. Counsel, Washington Metropolitan Area Transit Authority, Washington, D.C., for defendant.

## MEMORANDUM

JOHN LEWIS SMITH, Jr., Senior District Judge.

Plaintiff Excavation Construction, Inc. brings this action for monetary relief against defendant Washington Metropolitan Area Transit Authority ("WMATA"). Currently before the Court are cross-motions for summary judgment with respect to Count I of the complaint, and defendant's motion for summary judgment on Count II.

This case is a dispute about a "disputes clause" in a construction contract. In May 1973, defendant awarded a $21 million contract to plaintiff for construction of the Fort Totten, Takoma Park, and Silver Spring Metrorail stations. The contract included a provision, standard in WMATA construction agreements, concerning disputes "arising under this contract." In brief, the contract called for administrative disposition involving initial review by a

"contracting officer," and then by WMATA's "Board of Directors or its duly authorized representative for the determination of such appeals." The contract also included a standard "suspension of work" clause.[1]

Defendant did not issue its "notice to proceed" on the project until August 1973. As a result, plaintiff submitted a claim to WMATA for additional compensation in the amount of $818,000 because of the delay. The matter was processed pursuant to the disputes clause, and in September 1976, the WMATA contracting officer issued a decision awarding some $272,576 to plaintiff.

In December 1976, plaintiff noticed an appeal to the United States Army Corps of Engineers Board of Contract Appeals ("BCA"). The BCA held hearings in October 1979, and on April 30, 1982, granted plaintiff an award of $420,036 (including the $272,576 previously awarded). The award included compensation for "Home Office Overhead" allegedly incurred by plaintiff as a result of the 66–day delay in the issuance of the notice to proceed.[2]

In May 1982, defendant moved the BCA to reconsider its ruling on the home office overhead issue. The BCA in a six-page opinion denied the motion on September 14, 1982.

Throughout late 1982 and early 1983, plaintiff and defendant corresponded about the WMATA General Manager's review of the matter. On February 22, 1983, the General Manager executed a "final decision" on the appeal:

"Pursuant to the authority vested in the undersigned by the Washington Metropolitan Area Transit Authority (WMATA) Board of Directors to render a final decision in any dispute under the disputes article of a WMATA contract, and

"upon consideration of the record of proceedings before the Corps of Engineers Board of Contract Appeals together with the advisory opinions of that Board dated April 30, 1982 and September 14, 1982, which I hereby adopt, it is the final decision of the undersigned that the captioned appeal is in all respects SUSTAINED in the amount of $420,036.

---

**1.** The contract provides in pertinent part:
"DISPUTES
(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Board of Directors. The decision of the Authority Board of Directors or its duly authorized representative for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.
(b) This Disputes article does not preclude consideration of questions of law in connection with decisions provided for in paragraph (a) above. Nothing in this contract, however, shall be construed as making final the decisions of the Board of Directors or its representative on a question of law.

"SUSPENSION OF WORK
(a) The Contracting Officer may order the Contractor in writing to suspend, delay, or interrupt all or any part of the work for such period of time as he may determine to abe appropriate for the convenience of the Authority.
(b) If the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted by an act of tahe Contracting Officer in the administration of this contract, or by his failure to act within the time specified in this contract (or if no time is specified, within a reasonable time), an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) necessarily caused by such unreasonable suspension, delay, or interruption and the contract modified in writing accordingly."

**2.** This dispute turned the on the continuing validity of a widely-accepted method (the "Eichleay formula") for determining the amount of "home office overhead" recoverable under a suspension of work clause in a construction contract. *See generally Capital Electric Co. v. United States,* 729 F.2d 743 (Fed.Cir.1984) (discussing *Eichleay Corp.,* ASBCA No. 5183, 60–2 BAC ¶ 2688 (1960), *aff'd on recon.,* 61–1 BAC ¶ 2894.)

"/s/ Richard S. Page
Richard S. Page
General Manager"

Defendant, however, did not notify plaintiff of this decision, and plaintiff did not receive a copy until May 1983.

Meanwhile, on April 19, 1983, plaintiff filed this suit, seeking recovery of the $147,460 difference between the BCA's and the contracting officer's award, and punitive damages for defendant's "bad faith in the administering the Contract with respect to the resolution" of this matter (Count I). Count II involved several other disputes and their resolution and sought over $12 million in damages.

Ten days after plaintiff filed suit, defendant's general manager issued an "amended final decision:"

"[u]pon re-consideration of my unissued decision dated February 22, 1983 in light of the decision of the GSBCA in *Capital Electric Company*, GSBCA Nos. 5316 and 5317, February 17, 1983, and the legal precedent therein cited, and it appearing that applicability of the Eichleay formula in this appeal rises [sic] a substantial legal question and that by reason of the Contractor's action in the United States District Court for the District of Columbia, CA No. 83–1125 filed on April 19, 1983, the claim involved in this appeal has been made the subject of litigation between WMATA and the Contractor, it is the final decision of the undersigned that my unissued decision dated February 22, 1983 is hereby vacated; that the advisory opinions of the Eng BCA dated April 30, 1982 and September 14, 1982, to the extent they recommend entitlement for items other than home office overhead in the sum of $317,365.00 for an equitable adjustment to the Contract are hereby adopted; and the captioned appeal is SUSTAINED in the amount of $317,365.00."

Defendant forwarded this document and the original (February 22) decision to plaintiff on May 2.

## A. *Count I*

As noted, plaintiff filed its complaint before WMATA's general manager issued his decision; indeed, defendant's "failure to act on the Board's decision" was the basis of the suit. *See* Complaint ¶ 56. Although plaintiff has not sought leave under Fed.R. Civ.P. 15(d) to supplement its pleadings to reflect this development, both parties treat the validity of the general manager's decision as the central issue presented in Count I. Plaintiff makes a threshold challenge. The dispute resolution provision, plaintiff argues, does not contemplate *any* participation by the general manager; he has "no authority to alter, modify, or reverse a decision made by the [BCA]" under the terms of the disputes clause in the contract. Pls.Mem.Pts.Auth.S.J. at 1–4. Defendant submits that the contract places final appeals authority in the general manager and that the BCA merely provides "advisory opinions," which may be accepted or rejected by the general manager.

Defendant is correct: final authority in disputes clause appeals rests with the WMATA general manager. The question turns on interpretation of the contractual provision placing "final and conclusive" authority in the WMATA "Board of Directors or its *duly authorized representative* for the determination of such appeals" (emphasis supplied). By resolution dated July 7, 1967, the WMATA Board expressly designated the general manager as its "duly authorized representative" for "fully and finally" deciding disputes clause appeals (DX 1a). Moreover, the Board by resolution dated June 3, 1971, designated the BCA as its "authorized representative" to "hear and render *advisory opinions* and to *recommend* to the general manager ... final decisions on appeals arising under the Disputes clause of Authority contracts" (DX 1) (emphasis supplied).

It thus appears that the WMATA Board has spoken quite clearly as to the identity of its "duly authorized representative" for final determinations on appeals, *see Square Construction Co. v. WMATA*, 657 F.2d 68, 69 n.1 (4th Cir.1981); *WMATA v. Rago-*

*nese,* 617 F.2d 828, 829 (D.C.Cir.1980); *General Railway Signal Co. v. WMATA,* 527 F.Supp. 359, 360 (D.D.C.1979) *aff'd,* 664 F.2d 296 (D.C.Cir.1980), *cert. denied,* 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 418 (1981); *Metro Track Constructors v. WMATA,* CA No. 75–2129 (D.D.C. July 15, 1976), slip op. at 4–5 & nn.3,4, and it is noteworthy that at no point did plaintiff ever object to further review by the general manager. The ·final decision under review here therefore is the April 29 decision by the general manager.

Under the terms of the disputes clause, this determination is "final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." Rulings on purely legal issues, however, are subject to much broader review: "[n]othing in this contract ... shall be construed as making final the decisions of the Board of Directors or its representative on a question of law."

Plaintiff correctly observes that the general manager in his original decision expressly "adopted" the advisory opinions of the BCA, which contained detailed evidentiary analyses and findings. In his "amended final decision," the general manager gave two reasons for modification of the original order. First, he found that an interim decision by the General Services Board of Contract Appeals ("GSBCA") raised a "substantial legal question" as to the correctness of the home office overhead calculation formula utilized by the BCA. Second, the general manager pointed to the filing of this law suit by plaintiff. Plaintiff argues that: 1) the general manager lacks power to vacate or modify a prior "adoption" of a BCA advisory opinion; and 2) even if he can reconsider an earlier decision, the reasons offered here do not support the result.

■ Plaintiff's first argument is not persuasive. The Court has little doubt that the general manager, as the final administrative arbiter of contract disputes, possesses the "inherent right of every tribunal to reconsider [his] own decision within a reasonably short period of time," and to modify his orders in light of new legal or evidentiary developments. ·*Bookman v. United States,* 453 F.2d 1263, 1264–65, 197 Ct.Cl. 108 (1972). The more important issue, and the focal point of this litigation, is whether the general manager's amended final decision is "arbitrary or capricious" and whether it identifies and correctly answers the relevant "questions of law."

■ Under these standards, the decision must be reversed. The "substantial legal question" noted by the general manager— "the applicability of the Eichleay formula in this appeal"—has now been answered by the United States Court of Appeals for the Federal Circuit in its ruling on the very case cited in the April 29 decision. In *Capital Electric Co. v. United States, supra,* 729 F.2d at 746–47, the Court reaffirmed the validity of the *Eichleay* formula as a means of calculating recoverable overhead in suspension of work cases. With this decision, as plaintiff notes, there now "remains no basis for the general manager's deviation from the recommendation and award of the Board," Pts.Supp. Mem.Pts.Auth. at 3, for the Federal Circuit reversed the GSBCA decision relied on by the general manager as a correct statement of the governing legal standard.

Defendant apparently recognizes this, for its supplemental memorandum addressing the *Capital Electric* decision urges that "even under *Capital Electric* home office overhead recovery is properly denied." Def.Supp.Mem.Pts.Auth. at 6. In particular, defendant argues that the "common law of the District of Columbia" precludes an award for overhead, and that, more generally, there is "no evidence" supporting the BCA's decision.

There are a number of difficulties with defendant's position. First, defendant overlooks that the final decision under review here is that of its own general manager, not of the BCA. The general manager had two opportunities to review the evidentiary basis of the BCA's decision to deter-

mine whether it supported the award. In its first decision, "upon consideration of the record," the general manager expressly adopted in all respects (including factual findings) the BCA's decision. In its amended decision, the general manager simply cited the "substantial legal question" raised by the *Capital Electric* case (without exploring that decision's implications) and plaintiff's filing of this suit. The general manager said nothing about the factual defects in the BCA's decision, nor about the "common law of the District of Columbia." It is a bit late in the game for defendant to vigorously assert that "no evidence" supports the Board's decision when its own general manager apparently concluded otherwise, or at least deemed the issue unworthy of discussion.

Moreover, there is some doubt regarding the applicability of the purported "District of Columbia common law" rule governing recovery of extended overhead. It is noteworthy that neither the parties nor the various tribunals ever made reference to this "rule" throughout the administrative proceedings, a fact that gives a certain *post hoc* cast to defendant's argument. In any event, defendant's position should be rejected. First, of the three cases cited by defendant as articulations of the "common law," two involve questions of *statutory* construction in cases concerning the liability of a surety on a payment bond. *See Hartford Accident & Indemnity Co. v. District of Columbia*, 441 A.2d 969 (D.C. App.1982) (construing D.C.Code Ann. § 1–804(b) ); *United States f/u/b Mariana v. Piracci Construction Co.*, 405 F.Supp. 904 (D.D.C.1975) (Miller Act, 40 U.S.C. § 270a *et seq*).

The other case relied upon by defendant, *W.G. Cornell Co. v. Ceramic Coating Co.*, 626 F.2d 990 (D.C.Cir.1980) (*per curiam*) involved damages arising from a breach of contract. As the BCA correctly observed after considering this case (a conclusion not challenged by the general manager in either of his decisions), price adjustments under the suspension of work clause of a contract are not "limited to what would be recoverable in damages for breach of the contract." BCA Reconsid. at 3. *See C.H. Leavell & Co. v. United States*, 530 F.2d 878, 892–93, 208 Ct.Cl. 776 (1976); *Merritt-Chapman & Scott Co. v. United States*, 429 F.2d 431, 432, 192 Ct.Cl. 848 (1970); *cf. Seger v. United States*, 469 F.2d 292, 300, 199 Ct.Cl. 766 (1972).

Defendant's "common law" argument is deficient in several respects. From a "substantive" perspective, defendant has failed to demonstrate any such accepted and relevant rule applicable in suspension of work cases. From a "procedural" or "judicial review" perspective, the "common law" and evidentiary arguments represent the sort of *"post hoc* rationalizations [by counsel] for agency action" that courts may not accept. *Ft. Pierce Utilities Authority v. United States*, 606 F.2d 986, 1000 (D.C. Cir.) *cert. denied*, 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962) ). "[T]his court must not look to the reasons advanced by counsel, but rather to those in fact relied upon by the agency in question." *Compania de Gas de Nuevo Laredo v. FERC*, 606 F.2d 1024, 1031 (D.C.Cir.1979). The Court concludes that defendant's "amended final decision" rests on arbitrary and incorrect legal grounds, and that plaintiff's motion for partial summary judgment on the overhead award should be granted.

Defendant, however, is entitled to summary judgment on plaintiff's claim for punitive damages. Plaintiff seeks over $440,000 in punitive damages on the grounds of defendant's "unreasonable [sic], tortious delay, and bad faith" in administering the contract. Defendant urges that two well-established principles dispose of the claim. First, defendant argues, punitive damages are not available for claims that essentially sound in contract. Second and more generally, WMATA, as a governmental entity, is wholly immune from an award of punitive damages against it. Plaintiff contends that summary judgment is inappropriate in that the complaint alleges an accompanying "willful tort," and that WMATA, for puni-

tive damages purposes, should be treated as a private corporation, "free to contract and act on its own." Plts.Opp.Def.Mo.S.J. at 16.

■ Evaluation of defendant's legal liabilities begins with the interstate compact establishing WMATA. Under section 80 of the compact:

"Liability for Contracts and Torts

80. The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this Title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit." D.C. Code Ann. § 1–2431(80).

Second, § 4 describes WMATA as an "instrumentality and agency of each of the signatory parties." *Id.* at § 4. *See also Morris v. WMATA,* 34 FEP Cases 959, 960 (D.D.C. April 16, 1984). Finally, the Compact has been "approved and enacted into 'state law' by each of its signatories." *Heffez v. WMATA,* 569 F.Supp. 1551, 1554 (D.D.C.1983). In summary, WMATA's lia-

bility turns on state law, and state law here, whether it be supplied by Maryland or the District of Columbia, defines WMATA as an "agency or instrumentality" of the state.[3] Neither Maryland nor the District authorizes an award of punitive damages against a governmental unit in the absence of statute, and plaintiff cannot point to any such statute permitting punitives against WMATA specifically or governmental entities generally. *See Smith v. District of Columbia,* 336 A.2d 831 (D.C. App.1975); *Herilla v. Mayor City Council of Baltimore,* 37 Md.App. 481, 378 A.2d 162, 169 (1977). *See also Rieser v. District of Columbia,* 563 F.2d 462, 481–82 (D.C. Cir.1977), *modified* 580 F.2d 647 (D.C.Cir. 1978). Consequently, the Court concludes that WMATA is not, as a matter of law, subject to an award of punitive damages against it. *See Davis v. WMATA,* CA No. 82–1684 (D.D.C. May 5, 1983); *cf. Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Defendant's motion for summary judgment should therefore be granted in part.[4]

B. *Count II*

Count II involves five other claims heard but not yet decided by the BCA. Plaintiff alleges that:

"WMATA, having breached its contractual duty to provide a timely administrative process for the resolution of contaractual disputes, Excavation no longer is bound to await the outcome of that administrative process and is entitled to be compensated by this Court for these

---

**3.** Recent federal litigation involving WMATA's status as an "agent" of the signatories arises in the civil rights setting, where Eleventh Amendment immunity turns on an entity's characterization as an "instrumentality" or a "political subdivision." *See, e.g., Heffez v. WMATA, supra; Morris v. WMATA, supra.* Neither of these cases considers, nor does the plaintiff cite any cases supporting, the proposition that WMATA should be treated as a *private* entity for any purpose.

**4.** The final issue under Count I concerns plaintiff's demand for interest on the overhead award. The Court concludes that it should not attempt to resolve this matter without further

briefing by the parties. There apparently are two distinct elements of the interest question, the first concerning the availability and proof of an interest claim under the equitable adjustment clause of the contract, and the second stemming from the District of Columbia's general prejudgment interest statute (D.C.Code Ann. § 15–108). Neither side sufficiently develops these issues, and the parties' mere references to various (and lengthy) administrative decisions in another matter (*Rohr Industries, Inc.,* Eng BCA 4306) are inadequate. Consequently, the Court will defer ruling on the interest claim until the parties offer more complete and coherent submissions on the issue.

claims." Complaint ¶ 62 (emphasis supplied).

Plaintiff seeks over $3 million in such compensation as well as $9 million in punitive damages for the "tortious, bad faith, course of conduct which [defendant] exhibited in connection with the administrative resolution of disputes." Complaint ¶ 62. Defendant urges that the count be dismissed on exhaustion of remedies grounds and also contends that any delay is due to plaintiff's noncompliance with BCA procedural rules.

Defendant's motion should be granted on the basis of the Court of Appeals' recent decision in *Rohr Industries v. WMATA,* 720 F.2d 1319 (D.C.Cir.1983). In *Rohr Industries,* the Court reversed a dismissal on exhaustion grounds of a claim that "WMATA breached the contract with respect to implementing the Disputes clause:

"The claim by Rohr in Count II that WMATA breached the contract with respect to implementing the Disputes clause is clearly beyond the scope of the Disputes clause in the contract. It is a challenge to that process as established and conducted by WMATA. It depends not at all on any of the contract's particulars.

"Count II of Rohr's complaint cannot be said to be even "arguably" subject to the Disputes clause. Thus, it could not properly be dismissed on exhaustion grounds." *Id.* at 1323.

The decision in *Rohr Industries* thus requires a distinction between claims subject to the disputes clause and claims that challenge the dispute resolution process itself.

There is little question that Count II falls within the former category. The Court of Appeals in *Rohr Industries* did *not* hold that administrative delay itself works a waiver of the exhaustion requirement with respect to claims "subject to the disputes clause." It held only that claims for *damages* sustained as a result of administrative delay are not within the disputes clause and therefore not subject to administrative exhaustion. Plaintiff here makes no allegations of any injuries it suffered as a result of the delay, nor does it suggest that its request for punitive damages be treated as such an allegation. Moreover, six months after it filed suit, plaintiff acknowledged its continuing interest in administrative processing:

"[Plaintiff] strongly believes that a determination by the Board, with its experience generally and its specific familiarity with this Contract, would be most appropriate and helpful to the Court in deciding the questions presented to it, and particularly questions involving the adoption or rejection of the Board's determinations. Further, in view of earlier Court decisions involving its review of decisions by the Board, it appears clearly that findings of fact in particular will be sustained by the Courts. Accordingly, we again request that the Board actively decide these appeals." (DX 17e)

Under these circumstances, further discussion is not necessary. The Court concludes that the claims in Count II are "clearly [within] the Disputes clause in the contract." *Rohr Industries, supra,* 720 F.2d at 1323. Consequently, because plaintiff has failed to exhaust its contractual and administrative remedies, Count II is dismissed without prejudice.

Accordingly, plaintiff's motion for partial summary judgment on Count I is granted. Defendant's motion for summary judgment on Count I is denied in part and granted in part, and on Count II is granted.

An appropriate order follows.

## ORDER

Upon consideration of cross-motions for summary judgment on Count I of the complaint, defendant's motion for summary judgment on Count II, oral argument, and the entire record, it is by the Court this 21st day of June, 1984

ORDERED that plaintiff's cross-motion for summary judgment on Count I is granted, and that plaintiff is entitled to judgment in the amount of $147,460. It is further

ORDERED that defendant's cross-motion for summary judgment on Count I is granted with respect to plaintiff's claim for punitive damages, and denied in all other respects. It is further

ORDERED that defendant's motion for summary judgment on Count II is granted, and that Count II is dismissed without prejudice. It is further

ORDERED that plaintiff and defendant shall file within ten days supplemental memoranda of points and authorities addressing plaintiff's claim for interest under Count I.